947 P.2d 712 (1997)
133 Wash.2d 565
David NEWMAN, Respondent,
v.
KING COUNTY, Appellant.
No. 64164-1.
Supreme Court of Washington, En Banc.
Argued June 17, 1997.
Decided November 26, 1997.
*713 Arthur D. Curtis, Clark County Prosecutor, Richard A. Melnick, Deputy County Prosecutor, Vancouver, amicus curiae for Washington Ass'n of Prosecuting Attys.
Norm Maleng, King County Prosecutor, Oma Lamothe, David Eldred, Deputy County Prosecutor, Seattle, for Petitioner.
David Lawyer, Bellevue, for Respondent.
JOHNSON, Justice.
The Petitioner, King County, seeks discretionary review of a trial court order holding the files of an open police investigation are subject to disclosure under the public disclosure act (PDA), RCW 42.17. The question presented in this case is whether information within an open police investigation can be withheld from disclosure under RCW 42.17.310(1)(d) because the nondisclosure of the information is essential to effective law enforcement. The superior court ordered an in camera review of the entire file to segregate "public" documents, which must be disclosed, from "non public" documents, exempt from disclosure, because disclosure of these documents (1) renders law enforcement efforts ineffective; (2) violates personal privacy interests; or (3) otherwise is exempt under the PDA. We reverse the superior court and hold the entire file is categorically exempt from disclosure.

FACTS
On January 26, 1969, civil rights leader Edwin Pratt was murdered at his home in King County. The crime has not been solved. According to personnel of the King County Department of Public Safety (Department) and the Federal Bureau of Investigation (FBI), the case is open and the investigation active.
Richard Gies is the King County detective currently assigned to the case. Detective Gies associated himself with the investigation because he reviewed the file on his own initiative in 1990 or 1991. Prior to Detective Gies' review of the Pratt file, it was housed in a specific room where all unsolved homicide files are kept. According to Detective Gies, the last documents to be placed in the Pratt file were from the mid 1970s. There was no detective assigned to the case when he initiated his review.
In March 1994, David Newman, a freelance journalist, formally requested access to the Edwin Pratt murder file in a letter addressed to the King County Department of Public Safety. The request was submitted pursuant to RCW 42.17, the public disclosure act. Except for access to the initial incident report, Newman's request was denied by the Department's legal advisor, Kyle Aiken, in a letter dated March 24, 1994. This denial was based on RCW 42.17.310(1)(d), which permits nondisclosure of public documents essential to effective law enforcement or for protecting rights of privacy. Further, Aiken stated this was an open case and confidentiality of the records had to be maintained. The initial incident report released to Newman was heavily redacted.
A number of letters were sent by public officials and interested citizens requesting the public disclosure of the Edwin Pratt murder file. At the request of King County's executive's office, Aiken reexamined her denial of the investigative documents and determined more information could be disclosed. The release of more information was justified by the Department as an investigative *714 technique which might prompt someone to come forward with more information. In October 1994, the Department re-released the incident report with much less information redacted.
On December 20, 1994, Newman filed a lawsuit under RCW 42.17. Newman filed a motion for partial summary judgment on March 15, 1996, seeking a declaratory judgment that the Department violated the PDA, statutory penalties, and attorney's fees under the PDA for tardy disclosure of documents. The Department filed a cross motion for summary judgment, arguing the open investigation file was categorically exempt. The Department attempted to show, through evidence in the form of declarations, that nondisclosure of the requested open criminal investigation file was essential to effective law enforcement.
Newman filed a second motion for summary judgment on April 12, 1996. Newman requested the Department be ordered to deliver to the court the entire Edwin Pratt murder investigation file; that the court conduct an in camera review of the file to determine which documents may be disclosed; that the court grant declaratory judgment the Department violated the public disclosure act; and that the court grant statutory penalties and attorney's fees to Newman. The Department again filed declarations of law enforcement personnel asserting the essential need for law enforcement to maintain confidentiality of open criminal investigation files.
The superior court denied King County's cross motion for summary judgment, granted Newman's partial summary judgment, and held the investigation file could not have a blanket exemption from disclosure. Newman's second motion for summary judgment was also granted. The court ordered the County to deliver all documents to the court for in camera review. The court ordered the County to file with the court and deliver to Newman declarations from personnel familiar with the Pratt investigation which would assist the court with the in camera review. The court also awarded Newman statutory penalties and attorney's fees.
On November 13, 1996, this court granted the County's request for discretionary review of the trial court's rulings.

ANALYSIS

The Washington Public Disclosure Act
Although the public disclosure act (PDA) was designed to provide open access to governmental activities, the PDA includes specific exemptions which limit access to some documents. We must determine whether nondisclosure of public documents contained in an open criminal investigation file is essential for effective law enforcement and, therefore, exempt under RCW 42.17.310(1)(d). The present case requires us to define the scope of the statutory exemption.
The PDA reflects the belief that the public should have full access to information concerning the working of the government. Amren v. City of Kalama, 131 Wash.2d 25, 31, 929 P.2d 389 (1997). The purpose of the PDA is to ensure the sovereignty of the people and the accountability of the governmental agencies that serve them. RCW 42.17.251.
This court has found that the PDA is a "strongly worded mandate for broad disclosure of public records."[1]Amren, 131 Wash.2d at 31, 929 P.2d 389 (quoting Progressive Animal Welfare Soc'y v. University of Washington, 125 Wash.2d 243, 251, 884 P.2d 592 (1994)); Spokane Police Guild v. Liquor Control Bd., 112 Wash.2d 30, 33, 769 P.2d 283 (1989). Neither party debates whether this is an agency or a public record within the meaning of the PDA. The PDA is to be liberally construed to promote full access to public records, and its exemptions are to be narrowly construed. Amren, 131 Wash.2d at 31, 929 P.2d 389; Progressive Animal Welfare Soc'y, 125 Wash.2d at 251, 884 P.2d 592; RCW 42.17.251.
*715 Judicial review of agency denials of public disclosure requests is de novo. RCW 42.17.340(3). The court determines the application of a claimed statutory exemption without regard to any exercise of discretion by the agency. Hearst Corp. v. Hoppe, 90 Wash.2d 123, 129-130, 580 P.2d 246 (1978).
Exemptions
Once documents are determined to be within the scope of the PDA, disclosure is required unless a specific statutory exemption is applicable. Dawson v. Daly, 120 Wash.2d 782, 789, 845 P.2d 995 (1993); RCW 42.17.260(1). King County argues the contents of the Pratt murder file are exempt under RCW 42.17.310(1)(d), the "effective law enforcement" exemption. This section provides:
Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.
RCW 42.17.310(1)(d). Statutory exemptions are narrowly construed because the PDA requires disclosure, and the agency claiming the exemption bears the burden of proving that the documents requested are within the scope of the claimed exemption. Brouillet v. Cowles Publ'g Co., 114 Wash.2d 788, 793, 791 P.2d 526 (1990).
King County argues nondisclosure of information within an open criminal investigation file is essential for effective law enforcement, and argues privacy rights must be protected by nondisclosure. The County's primary argument for nondisclosure of all open criminal investigations is, simply, that disclosure of any open criminal file would inhibit effective police work. The County supports its position, arguing the exemption: (1) allows law enforcement agencies nationwide to share information; (2) prevents inadvertent or premature release of confidential details that would jeopardize the effectiveness of an investigation or violate a person's right to privacy; and (3) allows the police to determine, based on their professional judgment, when and how investigative information will be released so that apprehension and prosecution are possible. The County also argues nondisclosure protects the privacy interests of witnesses, suspects, defendants, and nondisclosure ensures a defendant's right to a fair trial.
Essential to Effective Law Enforcement
This court must determine if nondisclosure of information within the Pratt murder investigation file is essential to effective law enforcement. This court has not specifically addressed whether documents within an open criminal investigation file are essential to effective law enforcement, nor has the Legislature specifically defined this phrase. An inherent clash exists between the PDA's presumption and preference for disclosure, prior case law requiring a narrow interpretation of exemptions, and the broad language of the exemption.
The determination of the scope of the exemption requires a two-step analysis. The statute first requires the information be compiled by law enforcement. Newman argues the newspaper articles within the file were not compiled by law enforcement and, therefore, do not fit within this first requirement. The United States Supreme Court addressed this argument in John Doe Agency v. John Doe Corp., 493 U.S. 146, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989), and concluded documents that were created for one "purpose... were not disqualified from being `compiled' again later for a different purpose." John Doe Agency, 493 U.S. at 155, 110 S.Ct. at 476. We agree. Documents can serve more than one purpose, and documents can be compiled by law enforcement and remain available in their original and unprotected capacity. Under this definition of compiled, any documents placed in the investigation file satisfy the requirement that the information is compiled by law enforcement. The newspaper articles and any other information contained in the open investigation file were compiled by law enforcement in an investigative capacity and fulfill the first inquiry despite Newman's ability to gain access to this information in another form.
*716 The second step in the analysis requires the document to be essential to effective law enforcement. In past cases, Washington's PDA has been analogized to the Federal Freedom of Information Act (FOIA), 5 U.S.C. § 552; see Cowles Publ'g Co. v. State Patrol, 109 Wash.2d 712, 731, 748 P.2d 597 (1988) (newspaper publisher requested internal investigation information about police officers who were the subject of citizen complaints). This court noted that both statutes (the FOIA and the PDA) protect "enforcement proceedings" and provide exemptions from disclosure of records which would jeopardize criminal investigations. Cowles Publ'g Co., 109 Wash.2d at 731, 748 P.2d 597.
When the exemption is claimed by an agency, the United States Supreme Court has stated it is feasible for a court to make a "generic determination" about what is essential for effective law enforcement. See National Labor Relations Bd. v. Robbins Tire & Rubber Co., 437 U.S. 214, 223-24, 98 S.Ct. 2311, 2317-18, 57 L.Ed.2d 159 (1978). In determining if an investigation is leading toward an enforcement proceeding, the federal courts examine (1) "affidavits by people with direct knowledge of and responsibility for the investigation ..."; (2) whether resources are allocated to the investigation; and (3) whether enforcement proceeding are contemplated. Dickerson v. Department of Justice, 992 F.2d 1426, 1431-32 (6th Cir.1993). We agree with this approach. These three inquiries require the agency to explain why documents fall within the exemption and provide a basis to define the scope of the exemption.
After employing this test, it is evident disclosure is not required. The County has shown they and the FBI have personnel assigned to the case. Evidence was presented by individuals responsible for the investigation who stated the case was still open and enforcement proceedings were contemplated. The evidence also establishes the documents requested cannot be disclosed because their release would impair the ability of law enforcement to share information and would inhibit the ability of police officers to determine, in their professional judgment, how and when information will be released. We hold the broad language of the statutory exemption requires the nondisclosure of information compiled by law enforcement and contained in an open and active police investigation file because it is essential for effective law enforcement. The language of the statute provides for a categorical exemption for all records and information in these files.
In other contexts, this court has stated
In general, the Public Records Act does not allow withholding of records in their entirety. Instead, agencies must parse individual records and must withhold only those portions which come under a specific exemption. Portions of records which do not come under a specific exemption must be disclosed.
Progressive Animal Welfare Soc'y, 125 Wash.2d at 261, 884 P.2d 592. This approach cannot be followed in this case because the statute does not define or establish any guidelines to limit the scope of the exemption. The ongoing nature of the investigation naturally provides no basis to decide what is important. Requiring a law enforcement agency to segregate documents before a case is solved could result in the disclosure of sensitive information. The determination of sensitive or nonsensitive documents often cannot be made until the case has been solved. This exemption allows the law enforcement agency, not the courts, to determine what information, if any, is essential to solve a case. The language used in the statute protects law enforcement agencies from disclosure of the contents of their investigatory files.
King County has no duty to disclose any information contained in an open investigation file because the documents are exempt under RCW 42.17.310(1)(d). We conclude these documents are essential to effective law enforcement because the case is open; evidence presented specifically explains the burden placed on the agency's ability to perform its given role; and enforcement proceedings are still contemplated. King County has met its burden of showing the language and scope of the statutory exemption are broad and encompass all documents. No segregation of the documents is provided for under the language of the exemption.

*717 Statutory Penalties and Attorney Fees

Under the statute the trial court awarded Newman both attorney's fees and a statutory penalty. Since we reverse, Newman does not prevail against an agency in court and is not entitled to any statutory costs, fees, or penalties.

CONCLUSION
We hold RCW 42.17.310(1)(d) provides a broad categorical exemption from disclosure all information contained in an open active police investigation file and reverse the superior court. Accordingly, we reverse the superior courts' order for an in camera review of the entire investigation file, and its award of attorney's fees and statutory penalties
DOLLIVER, SMITH, GUY and TALMADGE, JJ., concur.
ALEXANDER, Justice, (dissenting).
The majority's far-reaching holding to the effect that an open investigatory file of a law enforcement agency is categorically exempt from disclosure is incorrect because it: (1) contravenes the plain language of the Public Disclosure Act (PDA); (2) contradicts this court's prior holding that the PDA does not authorize withholding of records in their entirety; (3) rests on federal authority that does not support the majority's conclusion; and (4) constitutes an improper delegation of judicial discretion to the law enforcement agency responsible for maintaining investigative records.
In my view, we should affirm the trial court's determination that the open status of an investigative file does not automatically exempt the entire contents of the file from public disclosure. We should also affirm its decision to conduct an in camera review of the file for the purpose of determining which investigative records within that file, if any, must be disclosed. Because the majority concludes otherwise, I dissent.

1. The Majority's Holding Contravenes the Plain Language of the Statute.
The PDA requires public agencies to make available for public inspection and copying "all public records" unless the record falls within a specific exemption. RCW 42.17.260(1). The public agency "has the burden of proving that the information sought falls within one of the Act's exemptions." Amren v. City of Kalama, 131 Wash.2d 25, 32, 929 P.2d 389 (1997) (citations omitted). Pertinent to the instant case, an exemption is provided for certain records compiled by law enforcement agencies. RCW 42.17.310(1)(d). Exemptions are, however, to be narrowly construed. That is made manifest by RCW 42.17.251, which provides:
The people of this state do not yield their sovereignty to the agencies that serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may maintain control over the instruments that they have created. The public records subdivision of this chapter shall be liberally construed and its exemptions narrowly construed to promote this public policy.
(Emphasis added).
It is the majority's failure to narrowly construe the so-called "law enforcement exemption" that is a primary flaw in its decision to shield all of the records within the Pratt murder file from judicial examination and potential disclosure. A plain reading of the language of the exemption makes clear that it applies only in the narrow circumstance where the nondisclosure of "[s]pecific intelligence information and specific investigative records ... is essential to effective law enforcement or for the protection of any person's right to privacy." RCW 42.17.310(1)(d) (emphasis added). The PDA, in short, dictates that the decision regarding disclosure or nondisclosure of records or information is to turn on whether nondisclosure is either essential to effective law enforcement or to protect privacy rights, not on whether the records are contained in an open file.
Unfortunately, the majority's holding that all records within an open investigative file are exempt turns the PDA on its head by *718 allowing an exemption, which is to be narrowly construed, to entirely swallow the provisions of this act which favors disclosure of public records. Under its holding, a law enforcement agency need only allege that a file is open in order to shield its entire contents from in camera review by the courts and prevent its disclosure to the public. The agency need not, the majority concludes, make any individualized showing that the records within the file are essential to effective law enforcement in order to justify its nondisclosure. Unfortunately, excusing law enforcement agencies from having to make such a showing upon a mere declaration that a file is open provides an incentive to such agencies to keep investigative files open merely to frustrate a citizen's request for disclosure or to avoid the administrative burden that may accompany disclosure. Hearst Corp. v. Hoppe, 90 Wash.2d 123, 131-32, 580 P.2d 246 (1978) (Costs and disruption to the agency are of insignificant impact compared to the stated public purpose of the Act.) (citing RCW 42.17.320(2)); see also Amren, 131 Wash.2d at 32, 929 P.2d 389. Furthermore, because there is no statutory limitation on the crime of murder, all unsolved murders are theoretically open investigations. Therefore, under the majority's holding, an entire class of files are categorically exempt from disclosure. This broad holding is incongruent with the intent of the people and the Legislature,[1] and is unsupported by the clear language of the law enforcement exemption.
Because the majority concludes that an entire file is exempt from disclosure, it is apparent that the majority equates a file to a record. This is wrong for at least two reasons. First, it is significant that the PDA, as it was originally enacted, provided for the nondisclosure of specific investigative files. Laws of 1973, ch. 1, § 31(d), at 23. However, the Legislature specifically amended that section to provide that only specific records are exempt from disclosure. Laws of 1975, ch. 294, § 17(d), at 1313. It is apparent that by the 1975 amendment the Legislature was making a clear distinction between records and files and was expressing its intent that only records, not files, are exempt from disclosure. Cf. Koker v. Armstrong Cork, Inc., 60 Wash.App. 466, 470-71, 804 P.2d 659, review denied, 117 Wash.2d 1006, 815 P.2d 265 (1991). Regretfully, by ignoring the Legislature's intent in amending the exemption, this court disregards the well-recognized rule of statutory construction that "where a law is amended and a material change is made in the wording, it is presumed that the legislature intended a change in the law." Home Indem. Co. v. McClellan Motors, Inc., 77 Wash.2d 1, 3, 459 P.2d 389 (1969) (citing Alexander v. Highfill, 18 Wash.2d 733, 140 P.2d 277 (1943)).
Second, the majority's substitution of the word "file" for "records" finds no support in the PDA's definition of "public record," which is "any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." RCW 42.17.020(36). Because that definition does not encompass an entire file and the PDA does not define "file," resort to a dictionary to give meaning to that term is appropriate. Dawson v. Daly, 120 Wash.2d 782, 791, 845 P.2d 995 (1993). BLACK'S LAW DICTIONARY defines "file" as, "in general, `file,' or `the files,' is used loosely to denote the official custody ... or the place in the offices... where the records and papers are kept." BLACK'S LAW DICTIONARY 628 (6th ed.1990). Since records are kept in files, and the PDA allows only for the exemption of specific records, it follows logically that an entire file is not categorically exempt from disclosure.

2. Washington Case Law Prohibits the Withholding of Records in Their Entirety.
The majority's holding that the entire file is exempt from disclosure also flies in the face of this court's prior decision in Progressive Animal Welfare Soc'y v. University of *719 Washington, 125 Wash.2d 243, 261, 884 P.2d 592 (1994) (PAWS) where we stated, "In general, the Public Records Act does not allow withholding of records in their entirety. Instead, agencies must parse individual records and must withhold only those portions which come under a specific exemption. Portions of records which do not come under a specific exemption must be disclosed." (Emphasis added); see also Limstrom v. Ladenburg, 85 Wash.App. 524, 530-31, 933 P.2d 1055 (Entire criminal file could not be exempt from disclosure as it contained public records. Therefore, "blanket" denial by the prosecutor's office was error.), review granted, 133 Wash.2d 1001, 943 P.2d 662 (1997).
The majority claims that PAWS cannot be followed because the PDA does not set forth any guidelines to limit the scope of the law enforcement exemption. Without such guidelines, the majority posits, "the law enforcement agency, not the courts, ... determine[s] what information, if any, is essential to solve a case." Majority op. at 716. The majority fails to realize that leaving the interpretation and enforcement of the PDA's requirements to the very agencies it was designed to regulate is the "most direct course to [the PDA's] devitalization." Hearst, 90 Wash.2d at 131, 580 P.2d 246.
Furthermore, the majority again overlooks the fact that the PDA limits the scope of the exemption to specific records that are essential to effective law enforcement or for the protection of any person's right to privacy. RCW 42.17.310(1)(d). The fear of the majority and amicus that open cases will be "compromised by the unfettered release of information," Amicus Curiae Br. at 3, is mitigated by the fact that judges may, and most likely will, consider the views of law enforcement officers in determining what is essential to law enforcement or whose right to privacy should be protected. It is only if and when a judge is persuaded, after an in camera review, that the release of information within an investigative file will not jeopardize an ongoing investigation or compromise a person's right to privacy, that the judge will allow its disclosure.
3. Federal Authority Does Not Support an Exemption Based on the "Status" of a File nor Does It Support a "Categorical" Exemption of "Open" Files from Disclosure.
The majority errs in citing the Freedom of Information Act (FOIA) to support its holding that the "open" status of investigatory files exempts them from disclosure. See Majority op. at 716 (citing Dickerson v. Department of Justice, 992 F.2d 1426, 1431-32 (6th Cir.1993)). Under the FOIA the exemption of records depends on the status of the case, i.e., whether the investigation is ongoing or not. Majority op. at 716 (citing Dickerson, 992 F.2d at 1431-32); see also Nevas v. Department of Justice, 789 F.Supp. 445, 448 (D.D.C.1992). In contrast, disclosability under the PDA hinges on the nature of the record, i.e., whether it is essential to effective law enforcement or the protection of any person's right to privacy. RCW 42.17.310(1)(d); see also Cowles Publ'g Co. v. State Patrol, 109 Wash.2d 712, 731, 748 P.2d 597 (1988). The majority's adoption of the Dickerson test ignores this important distinction and effectively rewrites the PDA's law enforcement exemption by instructing courts to base disclosure on the status of a file, not the nature of the records within the file.
The adoption of a test based on the FOIA is also wrong because the FOIA has a much broader standard for nondisclosure than the PDA. The FOIA permits nondisclosure "to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7) (emphasis added). Nondisclosure that is dependent on the record being essential to law enforcement is much narrower than the federal "reasonableness" test for exemption. Furthermore, as we have noted, the PDA provides that courts must narrowly construe all exemptions. RCW 42.17.251. The federal act lacks a corresponding mandate.
The majority concludes that once the "open" status of a file is ascertained, it is "categorically" exempt from disclosure. Majority op. at 716 (citing National Labor Relations Bd. v. Robbins Tire & Rubber Co., 437 *720 U.S. 214, 223-24, 98 S.Ct. 2311, 2317-18, 57 L.Ed.2d 159 (1978)). The Robbins Tire opinion actually supports the opposite conclusion. In that case, the Supreme Court held that Exemption 7 of the FOIA was designed to eliminate "blanket exemptions" for government records on the basis that "they were found in investigatory files compiled for law enforcement purposes." Robbins Tire, 437 U.S. at 236, 98 S.Ct. at 2324. Although the Court did allow for "generic determinations" of particular kinds of investigative records found within a file, it held that federal courts still need to determine whether the "generic" investigatory records should be disclosed or not, depending on whether they would interfere with enforcement proceedings. Robbins Tire, 437 U.S. at 236, 98 S.Ct. at 2323.
The majority's categorical exemption of open files is exactly the kind of "blanket exemption" the Supreme Court's holding prohibits. While the majority may be correct in stating that generic determinations could be made as to whether specific kinds of records in a file can be disclosed, exempting all open files from disclosure effectively precludes the trial court from conducting an examination of the file to make those determinations.
4. Trial Judges Should Be Allowed to Conduct In Camera Reviews of Specific Records Consistent With the Provisions of the Public Disclosure Act.
Finally, the majority's opinion essentially precludes trial judges from conducting an in camera review of specific investigative records when the file is declared by a law enforcement agency to be "open." This holding undercuts the fundamental responsibility of courts to ascertain and carry out the intent of the Legislature. Rozner v. City of Bellevue, 116 Wash.2d 342, 347, 804 P.2d 24 (1991). It also contravenes RCW 42.17.340(3), which provides in pertinent part:
Judicial review of all agency actions taken or challenged under RCW 42.17.250 through 42.17.320 shall be de novo. Courts shall take into account the policy of this chapter that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others. Courts may examine any record in camera in any proceeding brought under this section. The court may conduct a hearing based solely on affidavits.
(Emphasis added).
Here, if the superior court were permitted to conduct such an in camera review, it might conclude that some or all of the documents within the Pratt file are exempt from disclosure. On the other hand, the trial court might well determine that the disclosure of some or all of the documents would not prejudice effective law enforcement or interfere with privacy rights. Indeed, "if the requested material contains both exempt and non-exempt material, the exempt material may be redacted but the remaining material must be disclosed." Amren, 131 Wash.2d at 32, 929 P.2d 389 (citing RCW 42.17.310(2)) (emphasis added). The simple fact is the trial court cannot make a fair determination regarding disclosure until it examines the records within the file. By entirely foreclosing such an examination by the trial court, the majority improperly delegates the disclosure decision to the agency that maintains the file. This has the effect of completely jettisoning the statute's instruction that courts are to determine which public records are exempt from disclosure. Construing the statute liberally and the exemption narrowly, as we should, leads to the conclusion that the trial judge reached: there may be specific writings within the Pratt murder file that are not exempt from disclosure. In examining the file, the trial court may hear evidence from the law enforcement agency or other experts to assist it in determining which records, if any, are essential to effective law enforcement. In the final analysis, though, the only way that a court can accurately determine what portions, if any, of the file are exempt from disclosure is by an in camera review of that file.

CONCLUSION
The majority opinion directly contravenes the plain language of the PDA by exempting all open investigative files from disclosure at the call of the law enforcement agency that *721 compiled them. It also runs counter to the purpose of the PDA which is to preserve a central tenet of representative democracy, namely the sovereignty of the people and accountability of public officials and institutions to the people. PAWS, 125 Wash.2d 243, 884 P.2d 592. By its decision, the majority strikes a blow against the people's sovereignty by granting the public agency that has maintained the Pratt murder file for almost 30 years an absolute veto right over the disclosure of any of its contents. Furthermore, its holding wrongly insulates an agency from accountability for a murder investigation that any objective observer would have to concede has made little or no headway in three decades. While the majority's concern about an absence of guidelines governing disclosure of potentially sensitive police information is well taken, the statute sufficiently safeguards this interest with its provision for in camera judicial review. I would affirm the trial court.
DURHAM, C.J., and MADSEN and SANDERS, JJ., concur.
NOTES
[1] RCW 42.17.020(36) defines a "public record": "Public record" includes any writing containing information relating to the conduct of government or the performance of any governmental or propriety function prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics.
[1] What we refer to in this opinion as the PDA was a major part of a comprehensive initiative measure (Initiative Measure No. 276) that was approved overwhelmingly by the people of this state on November 7, 1972, by a vote of 959,143 for, 372,693 against. Laws of 1973, at 1863. The Act has been amended by the Legislature on several occasions in the succeeding years.