45 P.3d 620 (2002)
111 Wash.App. 502
COWLES PUBLISHING CO., Appellant,
v.
PIERCE COUNTY PROSECUTOR'S OFFICE, Pierce County, Washington; Gerald A. Horne, Prosecuting Attorney, Respondents,
and
Robert L. Yates, Jr., Intervenor/Respondent.
No. 27114-1-II.
Court of Appeals of Washington, Division 2.
May 3, 2002.
*621 Mary Katherine Young High, Tacoma, Douglas Warren Vanscoy, Gerald Thomas Costello, Barbara L. Corey-Boulet, Pierce Co. Deputy Pros. Attys, Tacoma, Roger A. Hunko, Law Office of Wecker Hunko Bougher, Port Orchard, for Respondents.
Duane Michael Swinton, Witherspoon Kelley Davenport & Toole, Spokane, for Appellant.
ARMSTRONG, J.
The Pierce County Prosecutor denied a Spokane newspaper's request to copy materials that Robert Yates, Jr. submitted urging the Prosecutor not to seek the death penalty for two murder charges against Yates. The newspaper appeals. We hold that the mitigation package qualifies as an investigative record, protection of which is essential to effective law enforcement and preservation of privacy rights. Because the mitigation package is exempt from disclosure, we affirm.

FACTS
Robert Yates, Jr. pleaded guilty to thirteen counts of murder and one count of attempted murder in Spokane County. As part of a plea bargain, the State agreed not to seek the death penalty. Meanwhile, the Pierce County Prosecuting Attorney charged Yates with two counts of murder.
Yates submitted a mitigation package to the Pierce County Prosecutor, urging the prosecutor not to seek the death penalty.[1] A reporter from a Spokane newspaper, The Spokesman Review, requested a copy of the mitigation package from the Pierce County Prosecutor under the Public Disclosure Act, Chapter 42.17 RCW. The prosecutor refused to disclose the package, citing two of the Act's specific exemptions, Yates' right to a fair trial and various other grounds.
Cowles Publishing Co., which owns The Spokesman Review, filed an action in Pierce County Superior Court to compel disclosure of the mitigation package. After reviewing the mitigation package in camera, the trial court agreed with the prosecutor and denied disclosure. Cowles appeals. We have allowed Yates, who also opposes disclosure, to intervene.

ANALYSIS
The Public Disclosure Act requires disclosure of "all public records" unless an exemption applies. RCW 42.17.260(1); Newman v. King County, 133 Wash.2d 565, 571, 947 P.2d 712 (1997). The Act defines a public record as "any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used or retained by any state or local agency regardless of physical form or characteristics." RCW 42.17.020(36). The parties agree that Yates' mitigation package is a public record.
When a party seeks disclosure of a public record, the burden is on the government agency to demonstrate that the record is exempt from disclosure. RCW 42.17.340(1); Newman, 133 Wash.2d at 571, 947 P.2d 712. We review a decision under the Public Disclosure Act de novo. RCW 42.17.340(3); Progressive Animal Welfare Soc'y (PAWS) v. Univ. of Wash., 125 Wash.2d 243, 252, 884 P.2d 592 (1994). The Act's disclosure provisions are liberally construed; its exemptions are "precise, specific, and limited." PAWS, 125 Wash.2d at 258, 884 P.2d 592.
Generally, the Act does not protect entire records; it provides for deletion of the portions protected by a specific exemption and disclosure of the remainder. RCW 42.17.260(1), .310(2); PAWS, 125 Wash.2d at 261, 884 P.2d 592; but see Newman, 133 Wash.2d at 574-75, 947 P.2d 712 (protecting files in open criminal investigations). For instance, the Act provides for deletion of information if disclosure would unreasonably invade personal privacy interests, but only if a specific exemption protects the information. RCW 42.17.260(1) (providing for deletion of "identifying details," but only "[t]o the extent required to prevent an unreasonable invasion of personal privacy interests protected by RCW 42.17.310 and 42.17.315[.]"); see also RCW 42.17.310(2) ("[T]he exemptions of this *622 section are inapplicable to the extent that information, the disclosure of which would violate personal privacy or vital governmental interests, can be deleted from the specific records sought.").
The prosecutor relies in part on the investigative record exemption under RCW 42.17.310(1)(d). This exemption protects:
Specific intelligence information and specific investigative records complied by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.
RCW 42.17.310(1)(d). Thus, the government must show that (1) the information it seeks to protect is intelligence information or an investigative record, (2) the information was compiled by law enforcement, and (3) protecting the information is essential (a) to effective law enforcement or (b) to protect a person's right to privacy.
1. Investigative Record
Cowles argues that the mitigation package is not an investigative record. Our Supreme Court has defined an "investigative record" under RCW 42.17.310(1)(d) as a record "compiled as a result of a specific investigation focusing with special intensity upon a particular party." Dawson v. Daly, 120 Wash.2d 782, 792-93, 845 P.2d 995 (1993) (quoting Laborers Int'l Union of N. Am., Local No. 874 v. City of Aberdeen, 31 Wash. App. 445, 448, 642 P.2d 418 (1982)). And "[t]he investigation involved must be `one designed to ferret out criminal activity or to shed light on some other allegation of malfeasance.' "Dawson, 120 Wash.2d at 793, 845 P.2d 995 (quoting Columbian Publ'g Co. v. City of Vancouver, 36 Wash.App. 25, 31, 671 P.2d 280 (1983)). The trial court found that the "[i]nvestigation is ongoing with regard to [the decision on whether to seek the death penalty]. All parties are conducting further investigations, seeking discovery and preparing for trial[.]" CP at 48.
Cowles contends that the exemption does not apply because when the prosecutor obtained the mitigation package, he was not attempting to "ferret out criminal activity." The "ferret out" language originated in Columbian Publishing, where a newspaper sought disclosure of statements police officers had submitted to the mayor in support of a no-confidence vote on their chief. We held that the investigative exemption did not protect the statements because "[t]his is purely a personnel matter, not an investigation in the intended sense, i.e., one designed to ferret out criminal activity[.]" Columbian Publ'g, 36 Wash.App. at 31, 671 P.2d 280. The "ferret out" phrase was repeated in Dawson, where an expert witness sought documents from the prosecutor used in cross-examination of the expert together with a copy of the personnel file of one of the deputy prosecutors. The Supreme Court held that the investigative exemption did not apply because the prosecutor was not investigating the expert for any criminal activity. Dawson, 120 Wash.2d at 793, 845 P.2d 995.
The "ferret-out" test may be appropriate in analyzing whether police department records qualify for the investigative exemption. It is little help here because a prosecutor's office does not generally conduct the initial crime investigation. Rather, the police first investigate crimes and then turn the information over to the prosecutor's office. Thus, the prosecutor's office would rarely be entitled to the investigative exemption under the ferreting-out test. But a prosecutor's office does investigate the accused and the alleged facts of the crime while preparing for trial. And one part of a prosecutor's investigation focuses on the question of an appropriate penalty. Indeed, in death penalty cases, the prosecutor is obligated to make an individualized decision as to whether to seek the death penalty. State v. Pirtle, 127 Wash.2d 628, 642, 904 P.2d 245 (1995).
Here, the prosecutor was investigating the critically important decision on the death penalty. The investigation was focused on Yates. And although the prosecutor did not conduct an original crime investigation and, thus, was not ferreting out criminal activity in that sense, the prosecutor was investigating Yates, his background, and his family, to aid in deciding whether to seek the death *623 penalty, a decision mandated by the duties of the prosecutor's office. We hold that the mitigation package qualifies as an investigative record under RCW 42.17.310(1)(d).
2. Compiled by Law Enforcement
Cowles also contends that the mitigation package is not an investigative record because it was not "compiled by" the prosecutor. But our Supreme Court has rejected this argument and held that "any documents placed in [an] investigation file satisfy the requirement that the information is compiled by law enforcement." Newman, 133 Wash.2d at 573, 947 P.2d 712. This is because "documents that were created for one `purpose ... were not disqualified from being compiled' again later for a different purpose." Newman, 133 Wash.2d at 572, 947 P.2d 712 (quoting John Doe Agency v. John Doe Corp., 493 U.S. 146, 155, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989)). Thus, a record compiled by law enforcement need not be created by law enforcement. See WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 464 (1969) (defining "compile" as "to collect and assemble (written material or items from various sources) into a document or volume [or] to put together.").
Necessity of Nondisclosure
Having decided that the mitigation package is a law enforcement investigative record, we must still determine whether nondisclosure is essential either for effective law enforcement or to protect privacy rights.
A. Effective Law Enforcement
Cowles contends that nondisclosure of mitigation packages generally is not essential to effective law enforcement. It maintains that the purposes of RCW 42.17.310(1)(d) are to protect information that could lead to apprehension of a criminal, to protect sophisticated investigative techniques, and to facilitate a free flow of information sharing between law enforcement agencies, citing Cowles Publishing Company v. Spokane Police Department, 139 Wash.2d 472, 478, 987 P.2d 620 (1999). These purposes, Cowles continues, do not support nondisclosure of death penalty mitigation packages. But our Supreme Court did not purport to compile an exhaustive list of the purposes of the investigative record exemption in Cowles Publishing. Rather, the Court explained that the government had not argued that disclosure in that case would compromise these government interests. Cowles Publ'g, 139 Wash.2d at 478, 987 P.2d 620. And Cowles Publishing dealt with a request for police records. Thus, the Court discussed the possible need for protection in the context of police work.
The prosecutor argues that mitigation packages must remain confidential because otherwise they "will receive press releases from the defense, not meaningful input concerning the mitigating circumstances." Respondent's Br. at 6. The trial court was concerned about a "chilling effect" on disclosure of mitigation information. CP at 47. The concern is legitimate. If a mitigation package is available to the public, a defendant's family members may be reluctant to share their personal information and feelings about the defendant. Without this information, the defendant's only input to the prosecutor would be defense counsel's arguments. But the defendant in a possible death penalty case is entitled to an individualized decision by the prosecutor whether to seek the death penalty. Pirtle, 127 Wash.2d at 642, 904 P.2d 245. Thus, to be effective, the prosecutor must have access to all information favorable to the defendant in deciding whether to seek the death penalty. We agree with the trial judge: public disclosure of mitigation information would have a chilling effect on the flow of such information to the prosecutor.
We conclude that the confidentiality of a mitigation package is essential to effective law enforcement.
B. Protection of Privacy
Under the Public Disclosure Act, disclosing information invades a person's right to privacy only if disclosure "(1) [w]ould be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public." RCW 42.17.255.
*624 Cowles contends that Yates and the prosecutor have not established that disclosing the information in the mitigation package would be highly offensive to a reasonable person. The mitigation package consists mainly of information about Yates' family. It describes each family member and how each would feel if Yates were sentenced to death. We conclude that a reasonable person would find disclosure of this information highly offensive.
Cowles maintains, however, that the mitigation information is of legitimate public concern because of public interest in the prosecutor's death penalty decision. But "the basic purpose and policy of RCW 42.17 is to allow public scrutiny of government, rather than to promote scrutiny of particular individuals who are unrelated to any governmental operation." In re Request of Rosier, 105 Wash.2d 606, 611, 717 P.2d 1353 (1986), superseded on other grounds by RCW 42.17.255. We hold that while a prosecutor's death penalty decision is a matter of legitimate public concern, personal information about the defendant's family is not. And the family's privacy interests outweigh any public interest in the basis for the prosecutor's decision.
Cowles argues that the trial court should have considered disclosing the mitigation package subject to deleting any information that would have violated privacy interests, as suggested in RCW 42.17.260(1). But Yates' 91-page mitigation package consists almost exclusively of information and photos about his family. Deleting these materials from the mitigation package would leave little to disclose.
Because we hold that the investigative records exemption protects the mitigation package, we do not discuss the other possible reasons the information might be exempt from disclosure.
Affirmed.
We concur: MORGAN, J., and HUNT, C.J.
NOTES
[1] The prosecutor decided to seek the death penalty.