IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ARTHUR WEST, | ) | No. 39011-0-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| THURSTON COUNTY, | ) | |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, J. — Arthur West appeals superior court orders denying him relief for what he contends were Thurston County's violations of the Public Records Act (PRA), chapter 42.56 RCW. We reverse in part and remand for further proceedings.

FACTS AND PROCEDURAL BACKGROUND

In early September 2020, members of a federal task force shot and killed fugitive Michael Reinoehl at an apartment complex in Thurston County. A news release issued by the Thurston County Sheriff's Office (TCSO) the next day reported that members of the Pacific Northwest Violent Offender Taskforce led by U.S. marshals were involved in the incident, and that

> [t]he team was at the location conducting surveillance on an apartment
> where they believed a wanted homicide suspect [Reinoehl] was located.

> The wanted subject came out of the apartment and got into a vehicle to leave. During the attempt to apprehend him, shots were fired at the suspect in the vehicle and he fled from the vehicle on foot. Additional shots were fired at the suspect and he was later pronounced deceased at the location. We can confirm at this time that the suspect was armed with a handgun.

Clerk's Papers (CP) at 43. The federal task force operated in Western Washington in concert with law enforcement partners, including a Thurston County subgroup. That subgroup included TCSO deputies holding cross-commissions. The Thurston County subgroup had not been asked by the U.S. Marshals Service to assist in Mr. Reinoehl's apprehension, however, and had not been involved in the shooting.

Under Washington law, an independent investigation was required where the use of deadly force by one or more peace officers had resulted in Mr. Reinoehl's death. The TCSO became the lead agency responsible for the investigation.

In October 2020, Arthur West directed the following public record request to Thurston County Public Records Officer Karen Horowitz:

> RE: Public Records Request for Reinoehl Arrest and Investigation Records
>
> Please consider this as a request for inspection or copies of records under RCW 42.56, the common law, and any administrative rules that may apply, in regard to the following records:
>
> All records and communications concerning the investigation, apprehension and killing of Michael Reinoel [sic], to include any interdepartmental communications, any police reports, CAPCOM records, any radio, radio-telephone, text or other electronic communications, any emails, writings, memos, directives, or other communications of any form, to include any review, investigation, or analysis of any form of the above mentioned events and related activity.

All words should be afforded their ordinary meaning as indicated by context, State Law, and Webster's Third New International Dictionary. Please feel free to contact me if any clarification or limitation in scope is necessary.

Thank you for your consideration.

CP at 29-30 (emphasis omitted).

Within five days, Ms. Horowitz acknowledged the request and denied it, explaining, "The records you have requested pertain to an active and on-going investigation . . . . These records are categorically exempt from production pursuant to RCW 42.56.240(1).[1] *See Newman v. King County*, 133 Wn.2d 565, 947 P.2d 712 (1997)." CP at 30. She stated that his request for public records was considered closed, but he was free to re-request the documents at a later date.

Mr. West immediately filed suit against the County seeking declaratory relief, costs, fees, penalties, and in-camera review of withheld records. He alleged that the categorical exemption relied on by the County did not apply because the TCSO was involved in an *internal* investigation to which no categorical exemption applied, citing

---

[1] RCW 42.56.240 exempts from public inspection and copying certain "investigative, law enforcement, and crime victim information"; its subsection (1) exempts:

Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.

No. 39011-0-III
*West v. Thurston County*

*Sargent v. Seattle Police Department*, 179 Wn.2d 376, 314 P.3d 1093 (2013).  Mr. West

contended the County was required to search for responsive records, disclose any that

were not exempt, and provide him with a privilege log identifying any records it claimed

*were* exempt.  A couple of weeks after filing suit, Mr. West filed a motion for in camera

review of the withheld records.

At the hearing on his motion for in camera review, Mr. West argued that the

investigation being conducted was taking place under new Washington law that required

an investigation of all uses of deadly force by police officers.  Given the nature of the

investigation, he argued that the reasoning of the Washington Supreme Court's decision

dealing with internal investigations, not criminal investigations, should apply.  He further

stated,

> I would also point out that to the extent that the rules of the Criminal
> Justice Training Commission apply, they require the policies and operating
> procedures of the IGG [sic[2]] to be available to the public, the names,
> members, supervisors, commanders, to be disclosed.
>
> Then there's also supposed to be a weekly progress report made of
> the conduct of the investigation[,] all which would be public record.

Rep. of Proc. (RP) at 8.  Characterizing his request as "broadly for all records related to

any investigation," not solely for the investigative file, he argued "there's the question of

---

[2] Presumably "the IIT," or "Independent [I]nvestigative [T]eam," the term used in
Criminal Justice Training Commission regulations for the group of individuals who
"operate completely independent of any involved agency to conduct investigations of
police deadly force incidents."  WAC 139-12-020.

whether there are other records beyond the investigative file that need[ ] to be produced."
*Id.*

In responding, the deputy prosecutor pointed out that a declaration she had filed from TCSO Lieutenant Ray Brady characterized the investigation as a homicide investigation, adding, "This is not an internal employment or misconduct investigation in so far as Thurston County is concerned because no Thurston County officer was involved in this shooting or was even present on the evening of Mr. Reinoehl's death." RP at 9. She added that to the extent Mr. West "is now clarifying his request," and "asking for things that are disclosable under the applicable WAC [(Washington Administrative Code) regulation] . . . then we would disclose them." RP at 10. In response to a question from the court, the deputy prosecutor stated that her understanding was that Mr. West had not requested the items disclosable under the WAC, but she was willing to treat his mention of the documents in the hearing as a clarification rather than require him to make a new record request.

The trial court issued a memorandum decision shortly after the hearing in which it ruled that "[t]he sole purpose of TCSO involvement in this matter is investigative as a law enforcement agency," so the County's "reliance on RCW 42.56.240(1) is appropriate and TCSO is justified in asserting the statutory blanket exemption during the time of its ongoing investigation." CP at 32. As for the clarification during the hearing that Mr.

West believed responsive documents were required to be disclosed by regulation, the court said it would "reserve its decision, pending Defendant's response to the request." CP at 32. Mr. West filed a motion to reconsider in camera review, which was denied.

The motion for in camera review had been heard on November 23, 2020, and that afternoon Ms. Horowitz e-mailed Mr. West to say she was told he had clarified his request to include "the following records":

- Policy documents and operating procedure documents from the Thurston County Sheriff's Office for the Independent Investigative Team (IIT)
- The names of the members, supervisors, commanders, and nonlaw enforcement community representatives on the IIT
- All press releases or public updates from the Thurston County Sheriff's Office related to the IIT investigation of the death of Michael Reinoehl

CP at 35. Ms. Horowitz stated she "did not previously understand you to have requested copies of these records," and asked him to inform the County by reply if he wanted it to process such a request. CP at 35. Mr. West replied that the records were covered by his original request and, "I do not believe a second request is necessary or appropriate." CP at 37.

On November 30, 2020, the County produced approximately 80 pages responsive to the three categories of records set forth in Ms. Horowitz's November 23 e-mail. In February 2021, Mr. West and the County filed cross motions for summary judgment. In support of his motion for summary judgment, Mr. West filed a declaration stating that

other agencies had furnished extensive records related to the Reinoehl use of force investigation in response to virtually the same request he submitted to Thurston County. The other agencies were Pierce County, the city of Lakewood, and the Washington State Department of Corrections (DOC).  Because he had brought a PRA lawsuit against DOC for its initial nondisclosure and the trial court in that case found a PRA violation, Mr. West argued that res judicata and collateral estoppel required the trial court to rule against Thurston County.

The trial court denied Mr. West's motion for summary judgment and granted summary judgment to Thurston County.  In a memorandum opinion, the trial court reiterated its view that the County justifiably invoked a categorical exemption in response to Mr. West's records request.  Mr. West filed a motion to reconsider summary judgment, which was denied.  Mr. West appeals.

                                          ANALYSIS

Mr. West appeals the trial court's orders denying his motion for in camera review and awarding summary judgment to the County.[3]

---

[3] Mr. West also nominally appeals the trial court's orders denying reconsideration of each of those orders.  The trial court denied both reconsideration motions on the basis that Mr. West demonstrated no grounds under CR 59(a) warranting reconsideration.  Mr. West fails to provide argument in his brief as to why denying reconsideration (as distinguished from the original order) was error.  We will not review the orders denying reconsideration.  *See* RAP 10.3(a)(6); *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998) (noting "[p]assing treatment of an issue or lack of reasoned argument" does not merit our consideration).

The history and nature of the statutorily-required use of force investigation process is viewed by Mr. West as important to the issues presented, so we begin by addressing it briefly.

I.      BACKGROUND: INDEPENDENT INVESTIGATION OF USE OF DEADLY FORCE BY PEACE OFFICERS

In 2017, a coalition of Washington residents and organizations concerned about police use of deadly force in Washington formed De-Escalate Washington to promote reform. *Eyman v. Wyman*, 191 Wn.2d 581, 588, 424 P.3d 1183 (2018). They developed Initiative 940 (I-940) and collected enough signatures to have I-940 certified to the legislature in January 2018. *Id.* Irregular action taken on the initiative in the legislature triggered litigation, in response to which the Washington Supreme Court directed the secretary of state to certify I-940 to the ballot for approval or rejection by the voters. *Id.* at 583. It was approved by the voters in the November 2018 general election. Its provisions were amended by the legislature by Substitute House Bill 1064. LAWS OF 2019, ch. 1, §§ 1-11. I-940 took effect July 28, 2019.

At the time of Mr. Reinoehl's death, one of the initiative's provisions, former RCW 10.114.011 (2019), provided that except as required by federal consent decree, federal settlement agreement, or federal court order,

> where the use of deadly force by a peace officer results in death, substantial bodily harm, or great bodily harm, an independent investigation must be completed to inform any determination of whether the use of deadly force

8

met the good faith standard established in RCW 9A.16.040[4] and satisfied other applicable laws and policies. The investigation must be completely independent of the agency whose officer was involved in the use of deadly force. The criminal justice training commission must adopt rules establishing criteria to determine what qualifies as an independent investigation pursuant to this section.

LAWS OF 2019, ch. 4, § 5. The criminal justice training commission adopted chapter 139-12 WAC effective in January 2020 to implement the requirement of an investigation independent of the involved agency. WAC 139-12-010.

In the case of Mr. Reinoehl's shooting, the independent investigative team, or IIT, charged with conducting the investigation was the Region 3 Critical Incident Investigation Team. In addition to Thurston County members, it included members from the Gray's Harbor County and Lewis County Sheriff's Offices, and from the Washington State Patrol. The TCSO was the lead agency and Lieutenant Brady served as the team commander.

WAC 139-12-030 is the criminal justice training commission regulation that identifies the categories of information Mr. West raised at the November 23 hearing as required to be disclosed. The regulation identifies five principles as fundamental to

---

[4] RCW 9A.16.040(4) provides that

[a] peace officer shall not be held criminally liable for using deadly force in good faith, where "good faith" is an objective standard which shall consider all the facts, circumstances, and information known to the officer at the time to determine whether a similarly situated reasonable officer would have believed that the use of deadly force was necessary to prevent death or serious physical harm to the officer or another individual.

enhancing public trust in the integrity of independent investigations involving police use of deadly force: independence, transparency, communication, credible process, and credible investigators.

In addressing transparency, WAC 139-12-030(2)(b) provides that the following will be "available to the public": "[t]he policies and operating procedures of the IIT" and "[t]he names of the members, supervisors, commanders, and nonlaw enforcement community representatives on the IIT." It also provides that "[t]he commander or other representative of the IIT will provide public updates about the investigation at a minimum of once per week, even if there is no new progress to report."

II.    THE COUNTY'S INVESTIGATIVE RECORDS WERE EXEMPT FROM DISCLOSURE

The PRA is a strongly worded mandate for broad disclosure of public records. *Resident Action Council v. Seattle Hous. Auth.*, 177 Wn.2d 417, 431, 327 P.3d 600 (2013). Under RCW 42.56.070(1), a governmental agency must disclose public records upon request unless a specific exemption applies. *Ameriquest Mortg. Co. v. Att'y Gen.*, 177 Wn.2d 467, 485-86, 300 P.3d 799 (2013). Judicial review of an agency's PRA response is de novo. RCW 42.56.550(3).

Information contained within an open and active criminal investigation file is categorically exempt from PRA disclosure under RCW 42.56.240(1). *Newman v. King County*, 133 Wn.2d 565, 575, 947 P.2d 712 (1997). Categorical exemption for an on-

going criminal investigation is a bright-line rule, but it has limited application. The categorical exemption from disclosure ends once an investigation has been closed and a case is referred for prosecution. *Cowles Publ'g Co. v. Spokane Police Dep't*, 139 Wn.2d 472, 479-80, 987 P.2d 620 (1999). The categorical exemption also does not apply to a law enforcement agency's internal disciplinary investigations. *Sargeant*, 179 Wn.2d at 392. To the extent an investigation could result in criminal charges as well as disciplinary action, the criminal investigation is outside the parameters of the internal investigation. *Id.*

Mr. West claims the exemption under RCW 42.56.240(1) is inapplicable to Thurston County's records, at least in part, because the TCSO was involved in an internal investigation of officer misconduct. He has no evidence suggesting that a TCSO officer was involved in the shooting death of Mr. Reinoehl, which would be required for it to be an "internal" investigation. By statute, TCSO could not be a member of the IIT if that were the case. *See* RCW 10.114.011 ("The investigation must be completely independent of the agency whose officer was involved in the use of deadly force.").

Mr. West's argument seems to be that an investigation under RCW 10.114.011 is tantamount or akin to an internal investigation, given what he believes motivated I-940 and the "use of deadly force" legislation that followed. But the applicable statutes and regulations do not give the IIT or its lead agency disciplinary authority. Rather, RCW

11

10.114.011 authorizes an investigation into whether the use of deadly force met the good faith standard of RCW 9A.16.040, which determines the officer's criminal liability. This is a criminal investigation.

As the County pointed out below, a number of provisions of WAC 139-12-030 are consistent with the confidential criminal character of the investigation. First, there is the negative implication of the transparency provision on which Mr. West relies. If only the limited information identified is to be publicly available while the investigation is open, the implication is that other information is not. WAC 139-12-030(2)(b) requires nonlaw enforcement community representatives on the investigation team to sign a binding confidentiality agreement at the beginning of each police use of deadly force investigation, to remain in effect until the prosecutor of jurisdiction declines to file charges or the criminal case is concluded. It provides that if the confidentiality agreement is violated, the nonlaw enforcement representative may be subject to prosecution. It provides that "[w]hen an independent investigation is complete, the information will be made available to the public in a manner consistent with applicable state law." *Id.*

Mr. West argues that even if the IIT investigation was not internal, the categorical exemption to PRA disclosure should not apply to investigations of law enforcement officers for public policy reasons. This position is inconsistent with the Supreme Court's

decision in *Sargent*, which recognized the possibility of categorical exemption for criminal investigation records, so long as the criminal investigation is not closed. 179 Wn.2d at 389-90. We will not depart from the standard set by *Sargent*.

As a final argument, Mr. West points to the fact that Pierce County, the city of Lakewood, and the DOC disclosed records in response to Mr. West's identical requests to them. But Thurston County is a distinct entity with unique interests as it relates to the documents he was requesting. At the time Mr. West submitted his PRA request, Thurston County was actively investigating the circumstances of Mr. Reinoehl's death under the auspices of a homicide investigation. There is no indication other agencies were involved in the same endeavor. Thus, while Thurston County was entitled to a categorical exemption under RCW 42.56.240(1), the other agencies presumably were not.

As the Supreme Court explained in *Newman*, even documents such as newspaper articles that are prepared by others and would be nonexempt if compiled for other purposes are subject to the categorical exemption when they are compiled as part of a criminal investigation. 133 Wn.2d at 572-73. For this reason, the fact that Mr. West was able to get materials related to Mr. Reinoehl's death from other agencies has no bearing on whether Thurston County was obliged to turn over the same paperwork.

III.  MR. WEST'S REQUEST WAS BROAD ENOUGH TO INCLUDE THE PRESS RELEASES ISSUED BY TCSO, BUT NOT POLICIES, PROCEDURES AND IIT TEAM IDENTIFICATION

Mr. West argues that the documents produced by the County on November 30, 2020, fell within the scope of his request, were wrongly withheld initially, and he is entitled to statutory penalties for their wrongful withholding.  He emphasizes that his request sought inspection or copies "of records under RCW 42.56, the common law, *and any administrative rules that may apply. . . ,*" CP at 29, which he contends covered the documents available to the public under WAC 139-12-030.  (Emphasis added and omitted.)  He argues that by broadly requesting "[a]ll records and communications concerning the investigation, apprehension and killing" of Mr. Reineohl, he should have been provided with all of the press releases.  CP at 29 (emphasis omitted).  We reject the former argument, but agree with the latter.

To obtain records under the PRA, a requester must state with "sufficient clarity" that they are seeking an identifiable public record.  *Wood v. Lowe*, 102 Wn. App. 872, 878, 10 P.3d 494 (2000).  A public record is "identifiable" when the requester provides "a reasonable description" enabling the agency to locate the record.  *Beal v. City of Seattle*, 150 Wn. App. 865, 872, 209 P.3d 872 (2009).  While agencies should construe the PRA broadly, they are not required to read minds.  *Cantu v. Yakima Sch. Dist. No. 7*, 23 Wn. App. 2d 57, 82, 514 P.3d 661 (2022) (citing *Bonamy v. City of Seattle*, 92 Wn. App. 403,

14

409, 960 P.2d 447 (1998)).  The law does not require agencies "to disclose records that have not yet been requested."  *Bonamy*, 92 Wn. App. at 409.

Mr. West's request for inspection or copies of "records under . . . any administrative rules that may apply," CP at 29, cannot fairly be read as independent of the subject matter he then described.  (Emphasis omitted.)  Where a subject matter is described, no agency would reasonably construe "records under . . . any administrative rules that may apply" to be asking for every document identified by regulation as publicly-available, whether related to the subject matter or not.

The subject matter of records requested by Mr. West were those "concerning the investigation, apprehension and killing of Michael Reinoel [sic]."  CP at 29 (emphasis omitted).  A copy of policies and operating procedures of an IIT established by the criminal justice training commission would not reasonably be viewed as a record concerning the investigation, apprehension and killing of Mr. Reineohl.  The names of the IIT's members, supervisors, commanders, and nonlaw enforcement community representatives would not reasonably be viewed as a record concerning that investigation, apprehension and killing.  These documents were not wrongly withheld.  If Mr. West was truly seeking information about the investigating body and its policies, he could easily have said so.  *Cf. Bonamy*, 92 Wn. App. at 409 (request was reasonably construed as seeking information *about* policies, but not policies themselves).

15

By contrast, public updates about the investigation produced by the lead agency *do* clearly fall within a request for records and communications concerning the investigation, apprehension and killing of Mr. Reineohl. We disagree with the dissent's position that, having been made available in some fashion as press releases, the public updates were not required to be disclosed in response to Mr. West's request. "A document is never exempt from disclosure; it can be exempt only from production" and "[a]n agency withholding a document must claim a 'specific exemption.'" *Sanders v. State*, 169 Wn.2d 827, 836, 240 P.3d 120 (2010). No "press release" exemption exists. The public updates should have been disclosed in response to the record request.

The County protests, however, that the subject line of Mr. West's record request limited the scope of his request by stating, "RE: Public Records Request for Reinoehl *Arrest and Investigation Records*." CP at 29 (emphasis added and omitted). We disagree. In crafting a public record request, the requester can be expected to focus on the body of his request, not its subject line. While a subject line could be an aid to construing an ambiguous narrative request, the narrative request in this case unambiguously requested records and communications "concerning" the investigation, apprehension and killing of Mr. Reinoehl. CP at 29 (emphasis omitted). A public update *about the investigation* is a record *concerning the investigation.* Given the strong presumption in favor of full disclosure, an agency should not unreasonably assume a

No. 39011-0-III
*West v. Thurston County*

narrow interpretation of a request. *Cantu*, 23 Wn. App. 2d at 99 (citing *Zink v. City of Mesa*, 140 Wn. App. 328, 337, 166 P.3d 738 (2007)). After applying a broad interpretation, if any ambiguity remains, it is incumbent upon the agency to clarify that ambiguity. *Id.* (citing *West v. City of Tacoma*, 12 Wn. App. 2d 45, 81, 456 P.3d 894 (2020).

We reverse the court's order granting the County's motion for summary judgment and denying Mr. West's cross motion insofar as they hold that the press releases or public updates from the TCSO were properly withheld. We remand with directions to the trial court to determine the relief to which Mr. West is entitled.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

I CONCUR:

Fearing, C.J.

No. 39011-0-III

PENNELL, J. (dissenting) — I disagree with the majority's assessment that Arthur West's initial public records request should be read to include press releases from the Thurston County Sheriff's Office (TCSO).

Mr. West's request made clear that he was looking for investigative records. Not only did the subject line of Mr. West's request indicate he was looking for "Investigation Records," the body of the request did as well. Clerk's Papers at 29-30. All the detailed records listed in Mr. West's request pertained to internal investigative reports and information. He sought access to documents such as "police reports," "interdepartmental communications," and "radio, radio-telephone, text, or other electronic communications." *Id*. at 29.

The actions of Arthur West confirm that he was not initially seeking copies of noninvestigative press releases. When Thurston County responded to Mr. West by explaining the requested records were exempt from production under RCW 42.56.240(1) (pertaining to ongoing investigative reports), Mr. West did not reply by claiming he had been misunderstood. Nor did he mention press releases. Instead, he filed suit challenging the legal basis of the denial. Mr. West insisted he was entitled to investigatory records because he claimed the TCSO was actually involved in an internal

investigation, not a regular criminal investigation. Mr. West cited *Sargent v. Seattle Police Department*, 179 Wn.2d 376, 314 P.3d 1093 (2013), to support his claim that internal affairs investigations are not subject to a categorical exemption under the Public Records Act (PRA), chapter 42.56 RCW.

At the time of the initial PRA submission, a reasonable person reading Mr. West's request and giving it a liberal construction would not have understood that Mr. West was looking for copies of press releases. Context matters. The plain text of Mr. West's request made it clear he was looking for internal investigative documents based on a mistaken legal theory about the TCSO's involvement. Furthermore, press releases, by definition, are documents that an agency has already distributed to the public. Mr. West's request cannot reasonably be read as encompassing information already made available to the public by Thurston County.

The purpose of the PRA "is to foster transparency and accountability." *John Doe A v. Wash. State Patrol*, 185 Wn.2d 363, 371, 374 P.3d 63 (2016). These goals are incentivized when there is a threat of penalty for nondisclosure of public records. *Yousoufian v. Off. of Sims*, 168 Wn.2d 444, 461, 229 P.3d 735 (2010). But when records have already been provided, the purposes of the PRA have already been met. *See Smith v. Okanogan County,* 100 Wn. App. 7, 12, 994 P.2d 857 (2000) ("The [PRA] does not require agencies to research or explain public records, but only to make those records accessible to the public."). It was reasonable for Thurston County to interpret Mr. West's

2

request as one that was not aimed at records that were already available through press

releases.[1] I dissent from the majority's conclusion that Mr. West has shown a PRA

violation.

_____

Pennell, J.

---

[1] This does not mean that press releases need not be disclosed if requested, only that it was reasonable for Thurston County to initially understand Mr. West's request as not covering press releases. Once Mr. West made a request for press releases, Thurston County properly disclosed the records.