229 P.3d 910 (2010)
David KOENIG, Appellant,
v.
THURSTON COUNTY and The Thurston County Prosecuting Attorney, Respondents.
No. 37446-3-II.
Court of Appeals of Washington, Division 2.
April 6, 2010.
*913 William John Crittenden, Attorney at Law, Seattle, WA, for Appellant.
Jeffrey George Fancher, Attorney at Law, Olympia, WA, for Respondents.
Michael Charles Kahrs, Kahrs Law Firm PS, Alex D. Brown, Attorney at Law, Seattle, WA, Amicus Curiae on behalf of Washington Coalition for Open Government.
PENOYAR, J.
¶ 1 David Koenig appeals the trial court's order denying his motion for partial summary judgment and ruling that a victim impact statement and a Special Sex Offender Sentencing Alternative (SSOSA) evaluation were exempt from disclosure under the Public Records Act (PRA), chapter 42.56 RCW.[1] We affirm that victim impact statements are exempt from the PRA under the investigative record exemption, but we reverse the trial court's determination that SSOSA evaluations are exempt. We hold that SSOSA evaluations must be disclosed after redaction of any identifying information regarding the victim and certain other third parties. We also remand for a determination of penalties under RCW 42.56.550(4).

FACTS
¶ 2 After James Lerud pleaded guilty to eight counts of voyeurism, he received a SSOSA[2] disposition from the Thurston County Superior Court.[3] Shortly after Lerud's arrest, the Seattle Post-Intelligencer published a short article quoting his victim and former roommate, who described how Lerud had videotaped her in the shower.
¶ 3 On August 17, 2000, Koenig submitted a request for public records in the Lerud case to the Thurston County prosecuting attorney. Koenig asked to inspect investigative files in the case, including witness statements, victim impact statements, and any associated documents or affidavits. The prosecuting attorney's file included Lerud's 14-page SSOSA evaluation dated June 26, 2000. Koenig sent a similar public records *914 request to the Thurston County Superior Court clerk's office. The clerk's office responded that Koenig could come to the courthouse to view the court file. The clerk's office also informed Koenig that the prosecuting attorney's motion to seal particular documents in the Lerud case would be heard the following week.
¶ 4 Following that hearing, the trial court ordered the victim impact statement and Lerud's privileged medical and psychological reports to be sealed from public disclosure in order to protect the victim's and Lerud's privacy. The prosecuting attorney's office then mailed copies of the case documents to Koenig, withholding the victim impact statement and Lerud's SSOSA evaluation based on the court's order.
¶ 5 On September 3, 2004, Koenig filed a public disclosure complaint against Thurston County and the Thurston County prosecuting attorney. On August 30, 2007, he moved for partial summary judgment on the issue of whether the SSOSA evaluation and victim impact statement were exempt from public disclosure. After a hearing, the trial court ruled in a letter opinion that the records were exempt from disclosure under RCW 42.56.240(1). The trial court subsequently denied Koenig's motion for partial summary judgment. The parties entered a stipulated order providing that the order to seal the documents was not binding on Koenig and that it did not restrict the prosecuting attorney's disclosure of the documents under the PRA. Koenig now appeals the denial of his summary judgment motion.

ANALYSIS
¶ 6 The public has a common law right of access to court case files. Nast v. Michels, 107 Wash.2d 300, 303, 730 P.2d 54 (1986). Access to court files rests within the trial court's discretion and the PRA does not apply. Nast, 107 Wash.2d at 304, 730 P.2d 54; see also City of Federal Way v. Koenig, 167 Wash.2d 341, 217 P.3d 1172 (2009). Thus, the trial court's order sealing the victim impact statement and SSOSA evaluation in the Lerud court file is not at issue.[4] Rather, the question here is whether the prosecuting attorney's office can refuse to disclose its copies of the same documents under the PRA.
¶ 7 The PRA guarantees the public full access to information concerning the workings of the government. Amren v. City of Kalama, 131 Wash.2d 25, 31, 929 P.2d 389 (1997). The PRA preserves "the most central tenets of representative government, namely, the sovereignty of the people and the accountability to the people of public officials and institutions." O'Connor v. Dep't of Soc. and Health Servs., 143 Wash.2d 895, 911, 25 P.3d 426 (2001).
¶ 8 The PRA requires disclosure of all public records unless an exemption applies. Cowles Publ'g Co. v. Pierce County Prosecutor's Office, 111 Wash.App. 502, 505, 45 P.3d 620 (2002). When a party seeks a public record, the government agency carries the burden of proving that the record is exempt from disclosure. Koenig v. City of Des Moines, 158 Wash.2d 173, 180, 142 P.3d 162 (2006). Additionally, if redaction would eliminate the need for an exemption, the PRA requires disclosure of the redacted record. RCW 42.56.210(1).
¶ 9 We review an agency's action under the PRA de novo. RCW 42.56.550(3). An appellate court stands in the same position as the trial court where the record consists only of affidavits, memoranda, and other documentary evidence. Progressive Animal Welfare Soc'y (PAWS II) v. Univ. of Wash., 125 Wash.2d 243, 252, 884 P.2d 592 (1994). We construe the PRA's disclosure requirements liberally and its exemptions are "precise, specific, and limited." PAWS II, 125 Wash.2d at 251, 258, 884 P.2d 592.
¶ 10 The parties agree that the documents at issue are public records. See RCW 42.56.010(2) (public record subject to disclosure under the PRA is "any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by any state or local *915 agency."). The question is whether the County may withhold these public records under RCW 42.56.240(1), which exempts from public inspection and copying "specific investigative records compiled by investigative, law enforcement, and penology agencies... the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy[,]" and whether, if that exemption applies, the records must be disclosed after redaction.

I. Victim Impact Statement

A. Exemption

1. Investigative Record
¶ 11 The victim impact statement is eligible for the RCW 42.56.240(1) exemption if it is an investigative record compiled by law enforcement agencies. Records fall within this category if they are "compiled as a result of a specific investigation focusing with special intensity upon a particular party." Dawson v. Daly, 120 Wash.2d 782, 792-93, 845 P.2d 995 (1993), abrogated in part on other grounds by Soter v. Cowles Publ'g Co., 162 Wash.2d 716, 755, 174 P.3d 60 (2007) (quoting Laborers Int'l Union, Local No. 374 v. City of Aberdeen, 31 Wash.App. 445, 448, 642 P.2d 418 (1982)). A record need not be created by law enforcement to be compiled by law enforcement, and documents created for one purpose are not disqualified from being "compiled" for another purpose. Newman v. King County, 133 Wash.2d 565, 572-73, 947 P.2d 712 (1997) (quoting John Doe Agency v. John Doe Corp., 493 U.S. 146, 155, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989)); Cowles Publ'g Co., 111 Wash.App. at 508, 45 P.3d 620.
¶ 12 In Cowles Publishing Company, a mitigation package that the defendant submitted to a prosecutor, who was investigating whether to seek the death penalty, qualified as an investigative record. 111 Wash.App. at 508, 45 P.3d 620. The court noted that the investigation focused on the defendant and that the prosecutor used the mitigation information as an aid in making a decision mandated by the duties of his office. Cowles Publ'g Co., 111 Wash.App. at 508, 45 P.3d 620. "[O]ne part of a prosecutor's investigation focuses on the question of an appropriate penalty." Cowles Publ'g Co., 111 Wash.App. at 508, 45 P.3d 620. "[A]ny documents placed in [an] investigation file satisfy the requirement that the information is compiled by law enforcement." Cowles Publ'g Co., 111 Wash.App. at 508, 45 P.3d 620 (quoting Newman, 133 Wash.2d at 573, 947 P.2d 712).
¶ 13 Koenig argues that a victim impact statement is not an investigative record because its purpose is to give the victim a right to comment to the trial court on the crime. Article I, section 35 of the Washington Constitution gives victims the right to make a statement at sentencing, subject to the same procedural rules that govern the defendant's rights. Also, RCW 7.69.030(13) gives victims the right:
[t]o submit a victim impact statement or report to the court, with the assistance of the prosecuting attorney if requested, which shall be included in all presentence reports and permanently included in the files and records accompanying the offender committed to the custody of a state agency or institution[.]
¶ 14 Koenig further contends that a victim impact statement does not qualify as an investigative record because an agency neither prepared nor compiled the statement. He argues that the statement's purpose is to assist the court, not the prosecutor's office, in reaching a sentencing decision.
¶ 15 Thurston County responds that victim impact statements are included in presentence reports that both the prosecuting attorney and the court receive. While the County concedes that the sentencing court considers presentence reports, this is not determinative. Prosecutors also rely on these reports, and the victim impact statements they contain, as investigative records that assist them in making their sentencing recommendations.[5]
¶ 16 A prosecutor's office victim advocate filed a declaration stating that she sends *916 victim impact statement forms to crime victims as part of her job. The advocate testified that "[t]his is done for sentencing purposes." Clerk's Papers (CP) at 278. The advocate provides the original impact statement to the trial court and a copy to the deputy prosecutor handling the case. The deputy prosecutor in the Lerud case confirmed that victim impact statements provide his office with information about how crimes affect victims.
¶ 17 Koenig, believing this issue to be a purely legal one, submitted no evidence to counter the facts in the County's declarations.[6] The trial court determined that the prosecuting attorney in the Lerud case procured the victim impact statement as part of his statutory duty to investigate and make sentencing recommendations to the court. The trial court concluded that "the victim impact statement is a record compiled by law enforcement." CP at 260.
¶ 18 We agree with the County that a victim impact statement held by a prosecutor's office and prepared for sentencing is an investigative record compiled by law enforcement. The prosecutor's office seeks out and compiles the statement as part of a specific investigation focused on a particular person. The prosecutor is entitled to argue for an appropriate penalty at sentencing. See RCW 9.94A.500(1). An important factor at sentencing is the seriousness of the offense, including the effect of the crime on any victims. RCW 9.94A.010(1); RCW 9.94A.500(1). Thus, one part of a prosecutor's investigation focuses on the crime's impact on the victim. That a victim impact statement is submitted to a court and potentially available as a court record does not preclude it from being an investigative record in the prosecutor's office compiled by law enforcement. The prosecutor and the trial court considered the victim impact statement at issue here in preparing for the Lerud sentencing. Accordingly, the victim impact statement qualifies as an investigative record compiled by law enforcement.

2. Essential to Effective Law Enforcement
¶ 19 If a record is an investigative record compiled by law enforcement, its nondisclosure must be "essential" to law enforcement or to protect a person's right to privacy for that record to be exempt from disclosure under RCW 42.56.240(1). Whether nondisclosure is essential to effective law enforcement is an issue of fact. Ames v. City of Fircrest, 71 Wash.App. 284, 295, 857 P.2d 1083 (1993). The broad language of this exemption, which the legislature has not defined, clashes with the PRA's presumption and preference for disclosure. Newman, 133 Wash.2d at 572, 947 P.2d 712. When an agency claims this exemption, the courts may consider affidavits from those with direct knowledge of and responsibility for the investigation. See Newman, 133 Wash.2d at 573, 947 P.2d 712 (quoting Dickerson v. Dep't of Justice, 992 F.2d 1426, 1431-32 (6th Cir. 1993)).
¶ 20 Several declarants in this case referred to the need to keep victim impact statements confidential. The victim in the Lerud case wrote that her statement was private and personal and that she trusted the prosecutor's office not to give out copies to the public at large:
The crime itself was one of invasion of privacy, thus it makes this demand for my impact statement that much more disturbing.... If my statement is determined to be part of the "public domain" and given out upon request, I will be victimized once again.... I did not ask to be a victim of a crime, and I don't want to believe that by being a victim of a criminal act that I've been stripped of my right to privacy. I would not have provided a Victim Impact Statement if I had been told that the statement *917 would be a public document to be given to any and all who asked for it.
CP at 125-26.
¶ 21 The deputy prosecutor in Lerud stated his opposition to disclosure as well:
For many years, this office has taken a "victim centered" approach to prosecution. As part of that philosophy, I believe that a victim's privacy must be closely guarded and only compromised when necessary in the interests of justice. To do otherwise, in my view, creates a chilling effect on the willingness of victims to report crime, provide information and cooperate with the prosecution. Therefore, the protection of victim privacy is critical to the effectiveness of law enforcement and the criminal justice system. Furthermore, the legislature (RCW 7.69.010) has mandated that prosecuting attorneys vigorously protect the rights of crime victims which include the right to be treated with dignity, respect, courtesy and sensitivity. If I have knowledge that anything a victim may provide will be handed over to the public through a public disclosure request, this office will inform the victim of that possibility. It is my opinion that if a victim knows this, he or she will be unwilling to provide a true and accurate impact statement.
CP at 105-06.
¶ 22 The prosecutor's office victim advocate also wrote that victim impact statement disclosures would have an adverse impact on effective law enforcement:
Victims have a statutory right to give a statement to the court at the time of sentencing (RCW 7.69). Often times, victims prepare and provide these statements to the State prior to completion of investigations and adjudication. Victim Impact Statements typically contain descriptions of embarrassing, intimate and violent acts.... [T]o know their raw emotions and most painful experiences as described in their own words could be released to the public upon a simple request, could lead the victim to decide not to make an impact statement. Such a result could seriously hinder investigations, prosecutions and hope of recovery.
CP at 277-78.
¶ 23 In an additional declaration, the Washington Coalition of Sexual Assault Programs' legal director stated that if victim impact statements were subject to public disclosure, many victims of sexually violent crime would not participate in the criminal justice system in any meaningful way. The Washington Coalition of Crime Victim Advocates' executive director also opposed public disclosure of victim impact statements, observing that many courts seal victim impact statements after sentencing, stating that "[r]eleasing those sealed records to just any member of the public would be a great disservice to crime victims, would tend to dissuade them from cooperating with law enforcement and the criminal justice system, and could put the victim's safety at risk." CP at 123.
¶ 24 Koenig did not rebut the substance of these declarations with any affidavits or evidence of his own. Koenig argues that nondisclosure is not essential to effective law enforcement because the judicial system functions even if a victim declines to file a statement for fear that it will be made public. He suggests that victims can self-edit their impact statements to remove embarrassing or private details. Koenig also asserts that victim impact statements are routinely disclosed to anyone who attends a sentencing hearing and that their confidentiality is not essential. Finally, Koenig points out that the victim in this case did not state that she would not have cooperated with law enforcement efforts to prosecute Lerud had she known that disclosure of her victim impact statement was required. Therefore, according to Koenig, no harm to law enforcement would have resulted if the victim had refused to file a statement.
¶ 25 We must determine whether nondisclosure of these statements is essential to effective law enforcement. The legislature has decreed that victims have a right to file such statements and to be treated with courtesy and sensitivity at all stages of the criminal justice process. See RCW 7.69.010 (stating legislature's intent that all crime victims *918 are treated with "dignity, respect, courtesy, and sensitivity" and that victims' rights are "honored and protected by law enforcement agencies, prosecutors, and judges in a manner no less vigorous than the protections afforded criminal defendants"); RCW 7.69.030(4) (reasonable effort shall be made to protect victims from harm arising out of cooperation with prosecution efforts); RCW 7.69.030(13).
¶ 26 In this case, the victim impact statement was contained in a confidential court file even before it was sealed, and the trial court noted that it would not have been disclosed to the public absent a court order. Written impact statements may contain details that the victim does not disclose in an oral statement made at the sentencing hearing. Therefore, the written statement may be the only way a victim feels free to fully explain the crime's impact. Public disclosure of such statements would have a chilling effect by making victims reluctant to fully disclose the impact of crimes. Additionally, disclosure would discourage victims from submitting victim impact statements in the first place. Here, the victim declared that she would not have submitted a victim impact statement had she known that it was subject to public disclosure.
¶ 27 An arguably similar chilling effect was dispositive in Cowles Publishing Company.[7] There, we observed that disclosure of mitigation packages might make a defendant's family members reluctant to share their personal feelings and information about the defendant and might adversely impact a prosecutor's ability to obtain all information favorable to the defendant in deciding whether to seek the death penalty. Cowles Publ'g Co., 111 Wash.App. at 509-10, 45 P.3d 620. Consequently, the confidentiality of a mitigation package was essential to effective law enforcement.
¶ 28 Sentencing decisions are part of the law enforcement process, and a victim impact statement is an important tool in reaching these decisions. See Brouillet v. Cowles Publ'g Co., 114 Wash.2d 788, 796, 791 P.2d 526 (1990) (law enforcement involves imposition of sanctions for unlawful conduct, including a fine or prison term); State v. Crutchfield, 53 Wash.App. 916, 927, 771 P.2d 746 (1989), overruled on other grounds by State v. Chadderton, 119 Wash.2d 390, 396, 832 P.2d 481 (1992) (sentencing court should consider crime's impact on victims). Disclosure of victim impact statements would not honor victims or protect their statutory right to present such statements. See RCW 7.69.010;.030(4). Koenig's suggestion that victims can simply edit out uncomfortable details contradicts the purpose of impact statements. We conclude that the nondisclosure of the victim impact statement at issue is essential to effective law enforcement. Consequently, the trial court did not err when it ruled that this statement was exempt from disclosure under the PRA.
¶ 29 Because RCW 42.56.240(1) provides that a record is exempt from disclosure if it is either essential to law enforcement or to the protection of any person's right to privacy, we need not address the State's strong argument that nondisclosure of the victim impact statement is essential to protect individual privacy.

B. Redaction of the Victim Impact Statement
¶ 30 Koenig next argues that even if the victim impact statement contains some exempt information, he is entitled to receive a redacted version under RCW 42.56.210(1). The PRA generally does not allow withholding records in their entirety. PAWS II, 125 Wash.2d at 261, 884 P.2d 592. Instead, agencies must withhold only those portions that fall within a specific exemption. PAWS II, 125 Wash.2d at 261, 884 P.2d 592. According to Koenig, the victim impact statement must be released to him absent identifying details, with an explanation provided for each redaction. See RCW 42.56.210(3) (agency responses refusing inspection in whole or part must explain how exemption applies to information withheld). Koenig asserts that he is entitled to an in camera review of the redactions under RCW 42.56.550(3).
*919 ¶ 31 The County argues that redaction will not cure the law enforcement issue because victims will be reluctant to provide victim impact statements if they know the statements will be disclosed in any form. The Lerud victim strongly objected to the disclosure of a redacted version of her impact statement, stating, "If my statement is determined to be part of the `public domain' and given out upon request, I will be victimized once again." CP at 126. The Washington Coalition of Crime Victim Advocates' executive director agreed that redaction would not sufficiently protect victims and ensure effective law enforcement because "[a] crime victim would be hesitant to provide in writing a statement relating to how a crime has truly impacted his or her life if s/he knew that a member of the public could obtain the document from the prosecutor, [notwithstanding] the fact that his or her name has been redacted." CP at 124. The deputy prosecutor in Lerud noted that "[i]t is extremely difficult to establish trust with a victim" and predicted that disclosure of an impact statement even after redaction "will have a chilling effect on law enforcement." CP at 106.
¶ 32 The redaction of any information identifying the victim from the victim impact statement will not appropriately address the chilling effect that disclosure would have on law enforcement. Victims' names are a matter of public record and the requesting party could easily rely on court documents to connect the named victim in court documents with the unnamed victim in the impact statement. The ease with which a victim could be identified negates the purpose of redaction. Even without the victim's name, victim impact statements contain highly personal information. The potential disclosure of even a redacted statement could cause victims to censor their statements or refuse to provide them altogether. Moreover, redaction is a highly subjective process. A victim may not trust that sensitive personal information would actually be redacted from the disclosed document. Because redaction will not cure the threat to effective law enforcement, we hold that the PRA does not require disclosure of a redacted victim impact statement.

II. SSOSA Evaluation

A. Investigative Record
¶ 33 Koenig assumes that a SSOSA evaluation is an investigative record compiled by law enforcement, but he argues that nondisclosure is not essential to effective law enforcement or the protection of any person's right to privacy. See RCW 42.56.240(1). We agree.

1. Essential to Effective Law Enforcement
¶ 34 In certain sex offense cases, the sentencing court, either on its own motion or a party's motion, may order an examination to determine whether the defendant is amenable to treatment. RCW 9.94A.670(3). The subsequent report or evaluation must include the offender's version of the facts and the official version of the facts, the offender's offense history, an assessment of problems in addition to alleged deviant behaviors, the offender's social and employment situation, and other evaluation measures used. RCW 9.94A.670(3)(a). The court considers the evaluation in determining whether the offender and the community will benefit from use of the SSOSA alternative, which requires treatment but allows for a reduced jail term. RCW 9.94A.670(4), (5). The legislature developed this special sentencing provision for first time offenders in an attempt to prevent future crimes and protect society. State v. Young, 125 Wash.2d 688, 693, 888 P.2d 142 (1995).
¶ 35 Koenig argues that SSOSA evaluations are public because their details are discussed in open court and are not confidential. Koenig also contends that even if defendants choose not to submit to SSOSA evaluations because they are afraid that the details might be made public, this will have no effect on their ultimate prosecution and will not adversely affect law enforcement. Finally, he points out that a defendant submitting a SSOSA has already been found guilty of a sex offense, which is a matter of public record, and that the defendant must register as a sex offender. See RCW 4.24.550; RCW 9A.44.130; RCW 10.97.050(1).
¶ 36 The County responds that the SSOSA evaluation is an important tool and that the *920 public disclosure of such evaluations will have a chilling effect on a defendant's willingness to seek such dispositions, which will, in turn, have a detrimental effect on effective law enforcement.
¶ 37 Additionally, several practitioners, including a sex offender treatment specialist, a prosecutor, and a criminal defense lawyer submitted declarations expressing concern that public disclosure would discourage defendants from participating in evaluations, plea bargaining, and sentencing. The treatment specialist noted that a SSOSA evaluation includes sensitive informationincluding the defendant's history of past sexual abuse as perpetrator or victim, and his arousal response to various sexual activitiesand that public disclosure of this information would make the evaluator's job "extremely difficult if not impossible to do." CP at 103. According to the defense lawyer, fewer offenders will pursue the SSOSA alternative for fear that employers, ex-family members, or the public would obtain this extremely personal information.
¶ 38 First, we note that a sex offense conviction is a matter of public record and that sex offender registration is required. RCW 9A.44.130;[8] RCW 10.97.050(1). These facts alone do not tell us whether the public disclosure of a SSOSA evaluation, and all that it entails, would harm effective law enforcement. We do not, however, find the arguments against disclosure persuasive. Concerns about the defendant's willingness to engage in the SSOSA process must be balanced against the public's right to full access concerning the workings of government.
¶ 39 Members of the public have a direct interest in disclosure. While SSOSA defendants may not wish for the details of their evaluation to be made public, those details are of great interest to the public at large in understanding the result in the sentencing decision. The same details are of even greater interest to adults who are concerned about protecting their family members from the offender upon release into the community.
¶ 40 The legislature specifically addressed this concern by enacting a statute that addresses the release of information about sex offenders to the public. See RCW 4.24.550.[9] The legislature noted that "sex offenders pose a high risk [of reoffense]" and stated that registration and disclosure of registration information provides communities an opportunity to "develop constructive plans to prepare themselves and their children for the offender's release" and to "provide education and counseling to their children." RCW 4.24.550; Laws of 1994, ch. 129, § 1; Laws of 1990, ch. 3, § 116. Allowing for public disclosure of SSOSA evaluations would enable parents to better prepare and educate their children regarding the release of an offender to their community.
¶ 41 We are also mindful of the strong incentive that defendants have to enter the SSOSA program regardless of disclosure. Qualifying offenders may receive a sentence or minimum term of sentence within the standard range and the sentence imposed may be suspended if it is less than 11 years in duration. RCW 9.94A.670(4). Offenders whose sentences are suspended serve a maximum of 12 months in jail if they comply with the sentencing court's conditions and no aggravating circumstances are present. RCW 9.94A.670(5)(a).[10] In addition, we find the argument that defendants will be unwilling to participate to be less compelling in the case of SSOSAs than in the case of victim impact statements. A victim impact statement is the personal intimate statement of a victim who has been terribly wronged. A SSOSA evaluation primarily concerns the defendant and the defendant's actions. While it may include details of the defendant's crime, the fact of at least one of these crimes has already been disclosed by the charges and the defendant's plea.
*921 ¶ 42 We also do not believe that victims will decline to report crimes or to cooperate in the investigation and trial based solely on the knowledge that the defendant may eventually admit the details of his crimes in a document that may become public. Nor are we persuaded that victims would generally be aware of SSOSA evaluations such that the possible risk of their eventual public disclosure would discourage victims from participating in the prosecution of crimes.
¶ 43 The County has not demonstrated that the public's interest in effective law enforcement, including an interest in effective plea negotiation and community safety, will be substantially harmed by the disclosure of these public records. We believe that the benefits that sex offenders gain from submitting to a SSOSA evaluation, including both sentencing and rehabilitation opportunities, will far outweigh any reluctance to have their information made public where the public is already aware of their conviction for a sex offense. In sum, we find that the PRA's law enforcement exemption does not prevent disclosure of Lerud's SSOSA evaluation.

2. Essential to Protecting an Individual's Right to Privacy
¶ 44 An investigative record may also be exempt under the PRA if nondisclosure is essential to protect any person's right to privacy. RCW 42.56.240(1). Under the PRA, "[a] person's `right to privacy' ... is invaded or violated only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public." RCW 42.56.050. As the statutory language makes clear, we must be mindful not only of the privacy rights of the offender, but also the privacy rights of other individuals named in requested documents, such as victims or their family members. See RCW 42.56.050.
¶ 45 With regard to an offender's privacy rights in his SSOSA evaluation, the parties assume, and we agree, that the release of information describing a sex crime committed by the offender would be highly offensive to a reasonable person. However, as discussed in detail above, we believe that the public has a legitimate interest in obtaining information about a sex offender in a SSOSA evaluation in order to understand the sentencing decision and to guard against a particular offender's risks to the community. This legitimate interest is also reasonable when balanced against the efficient administration of government. Dawson, 120 Wash.2d at 798, 845 P.2d 995. Again, we do not find that disclosure will substantially harm the government's prosecutorial function. It is unreasonable for Lerud and other sex offenders to expect confidentiality for information that they reveal during a SSOSA evaluation in order to seek a favorable sentence, and we find that their privacy rights are not violated by disclosing this information.
¶ 46 In contrast, we find that information in a SSOSA evaluation that identifies victims is exempt from disclosure because nondisclosure of such information is essential to protect victims' privacy rights. Disclosure of information that identifies a victim of a sex offense would be highly offensive to a reasonable person in the victim's position, and the public has no legitimate interest in this information. In Brouillet, our State Supreme Court noted that, while the public has a legitimate interest in information about the "extent of known sexual misconduct in the schools, its nature, and the way the school system responds in order to address the problem[,] ... there may be no legitimate public interest" in the release of information identifying the victims of such misconduct. 114 Wash.2d at 798, 791 P.2d 526. Although the issue of victim privacy was not squarely before the Brouillet court, we agree that the PRA protects victims' identifying information from disclosure. The public has a legitimate interest in understanding and addressing the threat of sexual abuse by sex offenders, but the public lacks a legitimate interest in learning a victim's name or identifying information.
¶ 47 Thus, we hold that portions of a SSOSA evaluation that disclose a victim's identity are exempt from disclosure, while portions *922 that do not identify victims are not.[11] We find that these privacy protections extend to all of the offender's victims whose names or other identifying information appear in the SSOSA evaluations, not just the victim of the crime for which the State prosecuted the offender. Thus, we conclude that the PRA requires the disclosure of SSOSA evaluations that are appropriately redacted to exclude information identifying the victim of the charged crime, other victims named in the evaluation, and, where appropriate, the victims' family members, friends, innocent bystanders and any other non-expert or non-law enforcement witness.

3. Health Care Information
¶ 48 On appeal, the County asserts for the first time that a SSOSA evaluation constitutes "health care information" that may not be disclosed to the public without the defendant's consent under former RCW 70.02.050.[12] The Rules of Appellate Procedure allow appellate courts to refuse to review "any claim of error which was not raised in the trial court." RAP 2.5(a). A party may present a ground for affirming a trial court decision which was not presented to the trial court if the record has been sufficiently developed to fairly consider the ground. RAP 2.5(a). We find that the record on appeal is not sufficiently developed to consider the County's new argument. Accordingly, we do not address the County's claim that SSOSA evaluations constitute "health care information" that is protected from disclosure by former RCW 70.02.050.

B. Availability of In Camera Review
¶ 49 Koenig asserts a right to in camera review of the documents under RCW 42.56.550(3). Under the statute, he may ask a trial court to review the redactions to determine if the redactions are appropriate. Whether in camera review is necessary is left to the trial court's discretion. Harris v. Pierce County, 84 Wash.App. 222, 235, 928 P.2d 1111 (1996). As Koenig has not yet received the requested SSOSA evaluation or had an opportunity to review the redactions, we leave the determination of whether in camera review is necessary for a trial court to review at a later date.

III. Attorney Fees and Statutory Penalties
¶ 50 A party who "prevails against an agency" in a PRA action is entitled to reasonable attorney fees and costs on appeal. See RCW 42.56.550(4); Progressive Animal Welfare Soc'y v. Univ. of Wash., 114 Wash.2d 677, 690, 790 P.2d 604 (1990) (attorney fees on appeal are recoverable under the PRA); RAP 18.1. Whether a party prevails is a "legal question of whether the records should have been disclosed on request." Lindeman v. Kelso Sch. Dist. No. 458, 162 Wash.2d 196, 204, 172 P.3d 329 (2007) (quoting Spokane Research & Def. Fund v. City of Spokane, 155 Wash.2d 89, 103, 117 P.3d 1117 (2005)). A party who prevails on the "principal issue" in a PRA appeal is entitled to attorney fees. O'Connor, 143 Wash.2d at 911, 25 P.3d 426. However, where both parties prevail on major issues, neither is entitled to attorney fees on appeal. Smith v. Okanogan County, 100 Wash.App. 7, 24, 994 P.2d 857 (2000). Since both Koenig and the County each prevailed on a major issue before us, we find that Koenig is not a prevailing party entitled to attorney fees and costs on appeal.
¶ 51 Similarly, the trial court must assess a mandatory monetary penalty against the County for each day that it withheld the SSOSA evaluation. RCW 42.56.550(4); see Yousoufian v. King County Executive, 152 Wash.2d 421, 437, 98 P.3d 463 (2004). We lack discretion to limit this penalty even when the case at hand raises "compelling, but conflicting, public policy considerations" that required our adjudication. See Koenig, 158 Wash.2d at 188, 142 P.3d 162 (quoting CP at 172-73) (holding that once the court determines that a requester is entitled to inspect records, the court is required to assess *923 a penalty). We also lack discretion to limit the daily fines based on the County's compliance with a court order sealing the victim impact statement and SSOSA evaluation. See Koenig, 158 Wash.2d at 188, 142 P.3d 162 (rejecting the agency's argument that it was not liable for penalties during the time that the agency complied with an injunction barring the disclosure of the disputed records).
¶ 52 Accordingly, we remand so that the trial court may determine the penalties to which Koenig is entitled under RCW 42.56.550(4).
¶ 53 Affirmed in part, reversed in part, and remanded for disclosure and redaction of the SSOSA evaluation and for a determination of penalties.
ARMSTRONG, J., (Dissenting in part).
¶ 54 I agree with the majority that the victim impact statement in this case is an investigative record and that its nondisclosure is essential to effective law enforcement. I disagree with the majority's conclusion, however, that nondisclosure of the SSOSA evaluation is neither essential to effective law enforcement nor for the protection of any person's right to privacy. Accordingly, I respectfully dissent.
¶ 55 In considering whether nondisclosure of victim impact statements is essential to effective law enforcement, the majority notes that courts are guided in such determinations by affidavits from those with direct knowledge of and responsibility for the investigation. Majority at 916 (citing Newman v. King County, 133 Wash.2d 565, 573, 947 P.2d 712 (1997)). But the majority summarily dismisses the affidavits filed in this case and instead relies on its own theory to support disclosure, namely, that disclosure of SSOSA evaluations is essential so that parents can better protect their children upon an offender's release into the community.
¶ 56 The majority supports this theory with the legislative finding behind the 1994 amendment to RCW 4.24.550, which authorizes public agencies to release information regarding sex offenders "when the agency determines that disclosure of the information is relevant and necessary to protect the public and counteract the danger created by the particular offender." RCW 4.24.550(1). The majority reasons that this statute, which allows for limited disclosure of certain information regarding sex offenders, authorizes complete disclosure of SSOSA evaluations.
¶ 57 I do not think that this conclusion follows either the letter or the intent of RCW 4.24.550, as its initial legislative finding illustrates.
Persons found to have committed a sex offense have a reduced expectation of privacy because of the public's interest in public safety and in the effective operation of government. Release of information about sexual predators to public agencies and under limited circumstances, the general public, will further the governmental interests of public safety and public scrutiny of the criminal and mental health systems so long as the information released is rationally related to the furtherance of those goals.
Therefore, this state's policy as expressed in RCW 4.24.550 is to require the exchange of relevant information about sexual predators among public agencies and officials and to authorize the release of necessary and relevant information about sexual predators to members of the general public.
Laws of 1990, ch. 3, § 116, at 25.
¶ 58 This finding shows that, contrary to the majority's conclusion, convicted sex offenders do not completely surrender their right to privacy. RCW 4.24.550 does not authorize a broad disclosure of information about a sex offender to the public. Rather, the Legislature's pronouncement "evidences a clear regulatory intent to limit the exchange of relevant information to the general public to those circumstances which present a threat to public safety." State v. Ward, 123 Wash.2d 488, 502, 869 P.2d 1062 (1994). Notification under the statute provides the public with the offender's name, picture, age, date of birth, facts regarding the offender's convictions, and the general vicinity of the offender's domicile. Russell v. Gregoire, 124 F.3d 1079, 1089 (9th Cir.1997). The law contains careful safeguards to prevent notification *924 in cases where it is not warranted and to avoid dissemination of the information beyond the area where it is likely to have the intended remedial effect. Russell, 124 F.3d at 1090. Only information "`relevant to and necessary for counteracting the offender's dangerousness'" is disclosed, and always accompanied by a warning against violence toward the offender. Russell, 124 F.3d at 1091 (quoting Ward, 123 Wash.2d at 503, 869 P.2d 1062).
¶ 59 Aside from the fact that disclosure of a SSOSA evaluation would considerably expand the scope of disclosure contemplated under RCW 4.24.550, I question whether such disclosure is necessary to either protect the community or educate our children. The majority's description of a SSOSA evaluation does not illustrate the highly personal and potentially offensive details such evaluations contain. In an affidavit filed with the trial court, a member of the Washington Association of Criminal Defense Lawyers provided a more comprehensive description:
While the format varies from evaluator to evaluator, typically, the evaluation will cover the following topics: Client's Version of the Incident; Victim's Version of the Incident; and Client's Medical, Mental Health, Employment, Educational, Developmental, Relationship/Marital, Substance Abuse, and Sexual Histories;
The information elicited from the individual to construct these sections of the evaluation is extremely personal and sensitive;
For example, to prepare the Sexual History section, the individual must relay information about initial sexual experiences, past sexual partners, sexual practices, and experiences with deviant arousal;
The information regarding deviant arousal is particularly sensitive, as the individual will be asked questions which include, but are not limited to, about whether he or she has engaged in exhibitionist, predatory, forceful or coercive sexual behaviors, or sexual practices that involve the humiliation of one's partner; and whether any of those practices involve children;
The psychosexual evaluator will also ask detailed questions about the instant offense, including information about the victim involved;
The information contained in the social and sexual history thus includes information about sexual activity involving persons other than the client seeking the evaluation;
In addition, the individual is asked questions about past and current mental health diagnoses and medication and treatment regimens for those diagnoses, as well as experience with and treatment for substance abuse problems;
Finally, in completing the social history section, the evaluator will ask a series of questions to determine the individual's past and current living environment, which often contains recitations of abuse the individual may have suffered in the past, including physical, sexual, and emotional abuse, and can be quite graphic in nature;
Often, a psychosexual evaluator will also ask that a client submit to either a sexual history polygraph, a plethysmograph, or both, the results of which will also be contained in the SSOSA evaluation;
The questions asked during the sexual history polygraph center on past and current sexual practices and experiences with deviant arousal;
The polygraph questions are extremely detailed and specific regarding those practices, and the report often contains far more detailed information than is contained in the Sexual History section of the psychosexual evaluation;
If a male individual is asked to submit to a plethysmograph, the individual will be hooked up to a device that measures penile arousal to a series of video and audio recordings depicting a wide range of sexual activity[.]
Clerk's Papers (CP) at 111-12.
¶ 60 I do not see that preparing children for the release of a sex offender into the community requires disseminating such information. Furthermore, I find this rationale for disclosure curious given the facts and arguments before us. Koenig sought the SSOSA evaluation soon after Lerud pleaded guilty and long before his release from confinement *925 was contemplated. At no time has Koenig referred to protecting children in arguing for disclosure.
¶ 61 Rather, the question here is whether the nondisclosure of SSOSA evaluations is essential to effective law enforcement. The majority dismisses the affidavits and declarations from the experts who addressed this question. Believing that this information should shape our analysis, I provide some excerpts below.
¶ 62 The sex offender treatment therapist who conducted the evaluation in the Lerud case[13] warned of the detrimental effect that disclosure would have on the SSOSA program:
It would be counterproductive to community safety for the SSOSA evaluations to become open to the public. It would make my job extremely difficult if not impossible to do. It is difficult to elicit and encourage the disclosure of sensitive information. It is essential the client undergoing a SSOSA evaluation be encouraged to be fully disclosing of vital sensitive information. Public disclosure would enable withholding and reduces the likelihood of discovery of additional victims and cause the victimization of innocent persons noted in the evaluation as well as the client.
CP at 103.
¶ 63 The deputy prosecutor in the Lerud case also wrote about the detrimental effect of public disclosure on law enforcement:
These reports are generally provided to me in an effort to reach a settlement in the case. Requiring disclosure of these reports, in my view, would substantially hinder the plea negotiation process. In fact, one would question if it would be malpractice for a defense attorney to provide a copy of the report to the state knowing that it is subject to public disclosure. Yet providing a copy of the report to the state is the only way for the defendant to request a recommendation from the state for the SSOSA option. At the time, I considered the report to be very private and work product. Upon further review of the public disclosure law, it is obvious that such a report must remain confidential for the additional reason of effective law enforcement. If a defendant understands that such a report could be handed over to anyone, there is a good chance the Prosecuting Attorney's Office would never be able to obtain the necessary SSOSA material. SSOSA provides a means to rehabilitate sex offenders. Losing this tool has a negative impact on effective law enforcement.
CP at 106-07.
¶ 64 The defense attorney who described the contents of a SSOSA evaluation stated that research findings solidly support the continued use of SSOSA, which has a "remarkably high success rate" and results in lower recidivism rates. CP at 114. She added that disclosing SSOSA psychosexual evaluations to the public would have a chilling effect on a sentencing program that has proven benefits for the individual pursuing the sentence and for the community.
From my experience, my clients who have obtained these evaluations are extremely fearful that the evaluations could be made available to anyone who seeks them[.] ... They are worried that employers, ex-family members, or the public could obtain this information and use it as a basis to terminate employment, improperly use it in civil litigation, or simply for harassment purposes[.] ... Should this information be made public, I am concerned that many of my clients will refuse to seek SSOSA out of fear that this highly sensitive information could be made available to family members, employers, and local community members, who will use it to retaliate or harass my clients[.] ... It will also inhibit the candor necessary for the evaluator to accurately assess the diagnosis of the individual seeking the evaluation and fashion an appropriate treatment plan[.]
CP at 113.
¶ 65 The director of the Washington Coalition of Sexual Assault Programs believed that if sexual deviancy reports were subject *926 to public disclosure, the plea negotiation process would be impeded, "in turn causing sex offenders to hold out for trial and take their chances with `reasonable doubt,' which many first time offenders are likely to instill in a jury." CP at 117. She added that "the more we increase penalties for sex offenders, the more difficult it is for prosecutors to obtain convictions because jurors are reluctant to hand out stiff penalties to offenders who do not appear `culpable enough' to warrant such severity." CP at 117. Finally, the trial court observed that the SSOSA evaluation "relates directly to both the prosecutor[']s recommendations to the court, to the court['s] own determination on sentencing, and to the defendant's ability to bargain for a plea agreement in the alternative to trial." CP at 258. The court concluded that release of this document would hinder the effectiveness of law enforcement.
¶ 66 I acknowledge that a sex offense conviction is a matter of public record and that sex offender registration is required. RCW 10.97.050; RCW 9A.44.130. The information revealed as a consequence does not compare, however, to the information contained in a SSOSA evaluation. The SSOSA alternative is in place because of the belief that treatment rather than incarceration is more beneficial for some sex offenders in reducing recidivism and therefore of benefit to society. Even if there is debate about the efficacy of the SSOSA program in reducing recidivism, SSOSA evaluations may help uncover uncharged crimes. See 13B Seth A. Fine & Douglas J. Ende, Washington Practice: Criminal Law, § 3708, at 187 (2009-10 Pocket Part) (terming SSOSA "the sharpest double-edged sword in the sentencing arsenal" because it can provide the only way for a sex offender to escape a lengthy prison term but can also expose him to prosecution on additional charges). Providing alternatives to confinement also leads to increased reporting of sex crimes, particularly in cases of intra-family abuse. 13B S. Fine & D. Ende, supra, § 3707 at 356 (2nd ed.1998). Finally, the SSOSA evaluation is an important tool in plea negotiations. If families know that evaluations will be made public, or if an eligible offender chooses not to pursue SSOSA because of the risk that his evaluation will be available to the public, disclosure may in fact be detrimental to effective law enforcement.
¶ 67 The County's position that public disclosure of such evaluations would render defendants unwilling to engage in such evaluations at all or engage in them fully supports the conclusion that public disclosure would be harmful to effective law enforcement. Such a consequence could be of greater potential harm to public safety than the nondisclosure of the details in a SSOSA evaluation.
¶ 68 Accordingly, I would not address whether nondisclosure of the SSOSA evaluation is essential for the protection of any person's right to privacy. Because the majority reaches this issue, however, I will explain where I disagree with its analysis and why I believe that nondisclosure is appropriate under this second condition in RCW 42.56.240(1).
¶ 69 Under the Public Records Act, disclosing information invades a person's right to privacy only if the disclosure (1) would be highly offensive to a reasonable person and (2) is not of legitimate concern to the public. RCW 42.56.050. Both conditions must be satisfied for disclosure to violate a right of privacy.
¶ 70 An individual has a privacy interest whenever information that reveals unique facts about those named is linked to an identifiable individual. Tacoma Pub. Library v. Woessner, 90 Wash.App. 205, 218, 951 P.2d 357 (1998). The right of privacy applies to the intimate details of one's personal and private life, in contrast to actions taking place in public. Dawson v. Daly, 120 Wash.2d 782, 796, 845 P.2d 995 (1993). There is no dispute that disclosure of the information in a SSOSA evaluation would be highly offensive to a reasonable person. See Cowles Pub'g Co. v. State Patrol, 109 Wash.2d 712, 721, 748 P.2d 597 (1988) (sexual relations are normally entirely private matters). Even if the victim's name is redacted, as the majority recommends, the information in the SSOSA evaluation can be easily linked to him or her by referring to other court documents.
¶ 71 But a document can remain private only if, in addition to containing private information, *927 its disclosure is not of legitimate concern to the public. RCW 42.56.050. Here, the term "legitimate" is defined as "reasonable." Dawson, 120 Wash.2d at 798, 845 P.2d 995. In assessing this factor, the public interest in disclosure must be balanced against the public interest in the efficient administration of government. Dawson, 120 Wash.2d at 798, 845 P.2d 995. "Requiring disclosure where the public interest in efficient government could be harmed significantly more than the public would be served by disclosure is not reasonable." Dawson, 120 Wash.2d at 798, 845 P.2d 995. The majority ignores the need to balance the public interests in disclosure and efficient government, concluding simply that disclosure is warranted because "[t]he public has a legitimate interest in understanding and addressing the threat of sexual abuse[.]" Majority at 921.
¶ 72 In my opinion, disclosure of the details in a SSOSA evaluation is not of legitimate public interest. It is the final SSOSA recommendation, and what the State and the trial court do with that recommendation, that is of public interest, not the underlying details of the evaluations.[14]See Tiberino v. Spokane County, 103 Wash.App. 680, 691, 13 P.3d 1104 (2000) (amount of time public employee spent on personal matters, not the content of those matters, was of public interest). Koenig argues that because the SSOSA evaluation largely determines whether a sex offender receives treatment or goes to jail, the public has a legitimate interest in those decisions. That interest can be satisfied, however, without a blanket disclosure of the evaluation. If defendants will not participate in an evaluation if the report is made public, disclosure will harm the public interest in efficient government far more than it will serve the interest in disclosure.
¶ 73 Koenig points out that several appellate opinions have discussed details contained in SSOSA evaluations. Each of the unpublished opinions cited concerns an appeal of a trial court's decision not to impose a SSOSA disposition. While these opinions include personal details, they do not divulge the entire contents of the evaluations at issue. And, where a defendant chooses to challenge a refusal to impose SSOSA, he must anticipate the disclosure of some personal information as the appellate court examines the justification for that refusal.
¶ 74 Koenig argues further that because the details of a crime are of legitimate public interest, the details of a SSOSA evaluation are of public interest, but the two sets of information are not comparable. Here, the trial court found sufficient grounds to seal the evaluation to protect it from public scrutiny. I conclude that the public interest in efficient government would be harmed significantly more than the public would be served by disclosure, and that the SSOSA evaluation at issue is exempt from public disclosure under RCW 42.56.240(1).
¶ 75 Furthermore, I would decline to provide Koenig with a redacted copy of either the victim impact statement or the SSOSA evaluation in this case. As Thurston County explains, redacting SSOSA evaluations will not cure the privacy and law enforcement issues because offenders will be reluctant to authorize the evaluations if they know the documents will be disclosed in any form. The defense attorney cited earlier outlined the problems of attempting to redact private information from SSOSA evaluations.
Given the specificity and range of highly personal, sensitive information contained within the psychosexual evaluation, it is imperative that the evaluation remain unavailable for public dissemination[.] ... Furthermore, all of the information contained within the document is highly sensitive[.]... It would be impossible to effectively redact a psychosexual evaluation so that the personal information is not made available for public dissemination, as it would require virtually all of the [evaluation]... to be redacted[.]
CP at 112-13. The deputy prosecutor in the Lerud case agreed that redacting a SSOSA evaluation would not encourage defendants to submit to such an evaluation because *928 many would not be willing to leave the redaction decision up to the prosecutor trying to convict them.
¶ 76 I believe that both documents at issue fall in their entirety into the exemption for investigative records whose nondisclosure is essential to effective law enforcement, if not to protect personal privacy rights. In an amicus curiae brief, the Washington Coalition for Open Government argues for the disclosure of redacted documents in this case, asserting that blanket barriers imposed by an agency to a records request interfere with the right of the people to access information so as to monitor the agencies that serve them. It is difficult to see how the public disclosure of a SSOSA evaluation will assist in the monitoring of any public agency. The SSOSA evaluation consists of personal and private information. While an evaluation's ultimate conclusion may be a matter of public interest, the underlying details are not, and the evaluation should not be subject to disclosure even with redactions, particularly where sealed by court order.
¶ 77 Accordingly, I would affirm the trial court on all counts and deny Koenig any recovery.
BRIDGEWATER, J. (concurring in part, dissenting in part).
¶ 78 I concur in Judge Penoyar's SSOSA evaluation analysis. It is an investigative record, its nondisclosure is not essential to effective law enforcement, and the law enforcement exception should not have prevented disclosure of the SSOSA evaluation. But, I respectfully disagree with Judge Penoyar's conclusion that the victim impact statement held in the prosecuting attorney's office records should not be disclosed as a public record.
¶ 79 I begin with the basis and purpose of the "Victim Impact Statement." The constitutional provision states:
Effective law enforcement depends on cooperation from victims of crime. To ensure victims a meaningful role in the criminal justice system and to accord them due dignity and respect, victims of crime are hereby granted the following basic and fundamental rights.
Upon notifying the prosecuting attorney, a victim of a crime charged as a felony shall have the right to be informed of and, subject to the discretion of the individual presiding over the trial or court proceedings, attend trial and all other court proceedings the defendant has the right to attend, and to make a statement at sentencing and at any proceeding where the defendant's release is considered, subject to the same rules of procedure which govern the defendant's rights. In the event the victim is deceased, incompetent, a minor, or otherwise unavailable, the prosecuting attorney may identify a representative to appear to exercise the victim's rights. This provision shall not constitute a basis for error in favor of a defendant in a criminal proceeding nor a basis for providing a victim or the victim's representative with court appointed counsel.
Wash. Const. art. 1, § 35.
¶ 80 Our Supreme Court fully explored the significance of the impact statements and their history. The context of its decision was in a capital punishment case in State v. Gentry, 125 Wash.2d 570, 888 P.2d 1105, cert. denied, 516 U.S. 843, 116 S.Ct. 131, 133 L.Ed.2d 79 (1995). It noted the following history:
[T]he Legislature, in an effort to give certain rights to crime victims and to encourage victims to cooperate in the prosecution of crimes, unanimously passed Senate Joint Resolution 8200, offering Washington's electorate the opportunity to add a victims' rights provision to the state constitution. The voters of the State of Washington overwhelmingly accepted the amendment; 78 percent of those voting cast ballots in favor of the amendment.

Gentry, 125 Wash.2d at 624, 888 P.2d 1105 (footnotes omitted). Specifically, the Supreme Court noted the right of the victims to make a statement at the defendant's sentencing. Gentry, 125 Wash.2d at 624, 888 P.2d 1105. And although the specific decision in Gentry was whether to allow a victim impact statement in a capital case where a jury was going to consider it, it speaks volumes to us *929 in this case. Gentry, 125 Wash.2d at 583, 628-29, 888 P.2d 1105.
¶ 81 Thus, the Supreme Court made clear the intention of the people and the legislature with regard to the constitutional amendmentto give rights to the victims and encourage their cooperation at sentencing. The amendment only references law enforcement to indicate that it is important to have the victim's cooperation. The import of this amendment is a set of rights that flows to the victim, not law enforcement.
¶ 82 The impact statement is simply not an investigative record; it is a document or a presentation made to inform the fact finder or the court for the purposes of sentencing. Only in the broadest sense does it have any usefulness to law enforcementenabling the victims to have participation in this manner of attendance and speaking of the crime's impact. Koenig is correct that its purpose is to assist the court, not the prosecutor's office, and it in no way assists the investigative arm of the police. Thus, I disagree that it is an investigative record. In this particular case the prosecutor's office assisted the victim in preparing the statement; but the statement was not for an investigative purpose.
¶ 83 Even if this court considered a victim's impact statement "investigative" to some general degree, its nondisclosure is not essential to law enforcement. For decades courts sentenced defendants without a victim impact statement. The stance taken by the prosecutor's office that there would be less participation if the statement were discloseable is without merit. Many victims give an impact statement in open court facing the perpetratorthese oral statements are not considered "essential to effective law enforcement," but Judge Penoyar's approach suggests that if these same statements were in writing and retained by the prosecutor's office, they would be "essential." Plurality opinion at 11. This defies logic.
¶ 84 The main opposition to releasing victim impact statements comes from persons and organizations that fear that victims will not participate if their statements are released. The prosecutor's office has a legitimate concern over privacy, which we do not address. But, we must remember that in this case the sentencing court sealed the record concerning the victim impact statement. This apparently is not unusual and allows the judiciary to make decisions concerning the releaseand we must also be aware that the defendant has access to this information.
¶ 85 As a solution, I suggest that the prosecutor's office not keep a copy of the impact statement after sentencing. It serves no purpose after the sentencing and potentially places discretion in the prosecutor's hands the decision to disclose or not, independent of the court. I have no objection to the prosecutor assisting the victim in preparing the statement or in the decision to make it in writing or orally. But, there is no purpose served by the prosecutor's office retaining a copy in its file. By retaining a copy, the victim's impact statement became discloseable. If the prosecutor's office had not kept the statement, Koenig would have had to go to the court and petition for release of a sealed document. He would have to provide a sufficient reason for disclosure; idle curiosity would not suffice. And, if the prosecutor needed to review the statement, he or she, as a party, could do so with the proper rationale.
¶ 86 If the prosecution disclosed the victim impact statement, I would not require redaction of the victim's identity in this document, as opposed to the SSOSA evaluation. The identity of the victim and the facts underlying the crime can be easily ascertained from the information, bill of particulars, and hearings. If the victim impact statement contains victim medical information apart from the crime or other instances of other crimes (e.g. assaults by other individuals), results of psychological testing (e.g. I.Q., special vulnerability, or otherwise), or other sensitive data, these could easily be redacted.
¶ 87 In conclusion, I would hold that the victim impact statement, when in the prosecutor's possession, was not an investigative record, was not "essential to effective law enforcement," Plurality opinion at 11, and privacy could be protected by sealing the victim impact statement which would allow the trial court to decide what and when data should be released. I would also hold that *930 the prosecutor has no duty to preserve or retain a copy of the victim impact statement after sentencing.
NOTES
[1] Throughout this opinion, we apply the provisions of the Public Disclosure Act (PDA), former chapter 42.17 RCW, that were in effect on August 17, 2000, the date of Koenig's PRA request. In 2005, the legislature amended the PDA, renaming it the Public Records Act (PRA) and recodifying it at chapter 42.56 RCW. Laws of 2005, ch. 274. For ease of reference, we cite to the PRA's current statutory provisions, which do not differ in substance from the former PDA provisions.
[2] Lerud's SSOSA disposition is governed by the statute in effect at the time of his February 2000 crimes. See former RCW 9.94A.120(8) (Laws of 1999, ch. 324, § 2), recodified as RCW 9.94A.670. For ease of reference, we cite throughout this opinion to the current SSOSA statute. Unless otherwise noted, the provisions of RCW 9.94A.670 that we cite do not differ in substance from former RCW 9.94A.120(8).
[3] State v. Lerud, No. 00-1-00336-0.
[4] The trial court did not address the effect of the order to seal on Koenig's public records request, and the parties stipulated that the order was not dispositive of that request.
[5] RCW 9.94A.500(1) provides that a court "shall consider the ... presentence reports, if any, including any victim impact statement" in making a sentencing decision.
[6] The exhibits that Koenig submitted with his summary judgment motion primarily consist of information about the Lerud case and communications between Koenig and Thurston County. Koenig also submitted several exhibits with his reply on motion for summary judgment, together with a declaration by an attorney who assisted Koenig's counsel in this case. These materials challenge the efficacy of sex-offender modalities like SSOSA, but they do not address the role that victim impact statements play in the sentencing process.
[7] 111 Wash.App. at 509-10, 45 P.3d 620.
[8] The legislature's numerous amendments to RCW 9A.44.130 since Lerud's 2000 conviction do not impact our analysis.
[9] An earlier version of this statute was in effect at the time of Lerud's crime. See Laws of 1998, ch. 220, § 6.
[10] Although it does not affect our analysis, we note that former RCW 9.94A.120(8) did not require the court to impose a term of confinement as a condition of the suspended sentence.
[11] Depending on the circumstances, the identity of non-victim third parties might also be exempt from disclosure. We leave this fact-specific inquiry for the trial court to address during the redaction process.
[12] Laws of 1998, ch. 158, § 1.
[13] The therapist does not so state in his declaration, but the County describes him as conducting the SSOSA evaluation for Lerud in its brief, and Koenig does not dispute that description.
[14] If the court imposes the SSOSA alternative, it will typically do so while citing the SSOSA evaluation recommendation as support for the alternative. We do not have the Lerud sentencing transcript and thus do not know whether that recommendation has already been made public.